| DISTRICT COURT OF THE VIRGIN ISLANDS |
|:---:|
| DIVISION OF ST. CROIX |

KATHERINE WILLETT,

      **Plaintiff/Counter-Defendant,**

      **v.**

CHRISTOPHER DAHLBERG,

      **Defendant/Counter-Plaintiff.**

**1:24-cv-00024-WAL-EAH**

TO:   Lee J. Rohn, Esq.
       David J. Cattie, Esq.

## ORDER

**THIS MATTER** comes before the Court on the Renewed Motion for Entry of Confidentiality and Protective Order, filed on May 9, 2025 by Attorney Lee Rohn on behalf of Plaintiff/Counter-Defendant Katherine Willett. Dkt. No. 46. Attorney David J. Cattie, on behalf of Defendant/Counter-Plaintiff Christopher Dahlberg, filed an Opposition on June 25, 2025, Dkt. No. 67; Willett did not file a Reply. For the reasons that follow, the Court will grant in part and deny in part the Renewed Motion for Entry of Confidentiality and Protective Order. The Court has incorporated the rulings set out in this Order into a Confidentiality and Protective Order that it will issue separately.

## BACKGROUND

### A. The Amended Complaint and Answer with Counterclaims

Plaintiff Katherine Willett filed an Amended Complaint in October 2024, Dkt. No. 7. She alleged that, in 2022, Dahlberg pushed, hit, and threatened her; he slammed her to the ground and refused to let her get up, which caused a spinal injury requiring multiple surgeries. *Id.* ¶ 5. As a result of Dahlberg's actions, Willett incurred medical expenses,

permanent injuries, post-traumatic stress disorder, sleep loss, anxiety, chronic pain, loss of income, economic losses, fear, mental anguish and loss of enjoyment of life. *Id.* ¶ 11. Willett alleged claims for assault (Count I); trespass (Count II); intentional infliction of emotional distress (Count III); false imprisonment (Count IV); trespass to chattels (Count V); conversion (Count VI); and battery (Count VII). *Id*. at 4-5.

In November 2024, Dahlberg filed an answer and counterclaims. Dkt. No. 9. He alleged that the parties were married from June 2009 until February 2024. *Id.* ¶ 6. The Superior Court entered a restraining order against Willett—a licensed medical provider—in February 2023 for stalking and harassing him. *Id.* ¶¶ 7, 8. Dahlberg further alleged that Willett had experienced mental and psychological issues for years, including bipolar disorder, *id.* ¶¶ 9, 10, and that she admitted to him that she lied on her Virgin Islands medical license application and falsified licensure documents in the Virgin Islands, South Carolina, North Carolina, and Florida by denying her mental health issues and denying that she was taking medication for those issues. *Id.* ¶¶ 15, 17-19, 26. Dahlberg alleged that Willett's bipolar disorder involved hypersexual activity; she would engage in extramarital affairs with men and women and taunt Dahlberg about them to harm him mentally and emotionally. *Id.* ¶¶ 27-30. He also alleged that Willett stole sums of money from his bank account, *id.* ¶¶ 38-41, and that her abusive treatment of him caused severe psychological trauma, *id.* ¶ 45. The court granted temporary custody of the couple's minor children to Willett and visitation to Dahlberg, but the children had to flee the Virgin Islands to escape her abuse and now reside exclusively with Dahlberg. *Id.* ¶¶ 45-47. He alleged counterclaims for abuse of process (Count

I); conversion (Count II); and intentional infliction of emotional distress (Count III). *Id.* at 8-10. Willett filed an answer to the counterclaims on January 30, 2025. Dkt. No. 17. The Court denied Willett's Motion to Amend the Complaint on April 30, 2025. Dkt. No. 43.

### B. Amended Motion for Protective Order

On March 14, 2025, Plaintiff filed a Motion for Entry of Confidentiality and Protective Order, Dkt. No. 29, which the Court denied without prejudice on April 29, 2025, after determining that the record was "insufficient to assess Willett's motion." Dkt. No. 41 at 11. The Court provided Willett a deadline to refile her motion for protective order, which was briefly extended, Dkt. No. 45. Willett timely filed her Renewed Motion for Entry of Confidentiality and Protective Order ("Renewed Motion") on May 9, 2025. Dkt. Nos. 46, 47.

In the Renewed Motion, Willett asserts that she filed her claims as a result of repeated and extreme domestic violence by Dahlberg that caused her severe, permanent, and disabling spinal injuries requiring surgical intervention. She also claimed mental anguish and suffering and post-traumatic stress disorder. Dkt. No. 47 at 3. In response, Dahlberg filed counterclaims alleging that Plaintiff was unfaithful, suffered from mental issues, lied on her medical board application, falsified medical documents, wrote prescriptions for friends, had been institutionalized and should not be practicing medicine. *Id.* However, he alleged only claims for conversion of money from a joint bank account and intentional infliction of emotional distress, and his allegations are irrelevant to his actual causes of action. *Id.*

Willett proffered a proposed confidentiality agreement to Dahlberg. Dkt. No. 47-1. Dahlberg sent back modifications on February 11, 2025. Dkt. No. 47-2. The modifications

were not acceptable because Dahlberg: (1) limited confidential documents only to medical records and did not include financial information, information as to drug or alcohol use, sexually explicit information, and the like as confidential; (2) refused to keep confidential the medical records of their minor children; (3) allowed dissemination of confidential records to law enforcement, child protective services, investigators at any hospital or medical service provider or any government agency in any jurisdiction dealing with professional licensing or oversight; (4) refused to agree that anyone shown confidential information was not required to keep it confidential; (5) did not allow designation of confidential information in depositions to be redacted, marked confidential, and sequestered; and (6) refused to agree that confidential materials would not be shared with third parties. *Id.* at 3-4. Plaintiff attempted to edit Defendant's document to make it more confidential. Dkt. No. 47-3. Dahlberg responded that while he agreed to keep financial information confidential, he would not agree to "most" of the other proposed edits. Dkt. No. 47 at 4. In that regard, he would not accept any restrictions on sharing information in medical records with medical boards or licensing organizations; he did not agree to make information about the children confidential; and he continued to demand dissemination to third parties without confidentiality. *Id.*, citing Dkt. No. 47-4. Willett added that issues regarding the minor children were being litigated in Family Court, and any discovery the Defendant needed regarding that litigation could be requested from the Family Court Judge. *Id.* at 10.

She describes, paragraph by paragraph, the remaining points of contention between her proposed Protective Order and the objections made by Dahlberg. *Id.* at 5-9. In support of

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 5

her position to keep not only medical records but psychological records confidential, even where a plaintiff has placed her physical and emotional state at issue, Willett cited *Wallace v. Kmart Corp.* No. 02-cv-107, 2009 WL 1587283 (D.V.I. June 5, 2009), and *Mahoney v. L.S. Holdings, Inc.*, No. 12-cv-67, 2013 WL 12314888 (D.V.I. Aug. 6, 2013). She argues that this case was not about what information she disclosed to the V.I. Board of Medical Examiners ("VIBME"), pointing out that this Court was not in any position to make decisions on physician licensure in the Territory. Dkt. No. 47 at 10-11. Dissemination to third parties (like the VIBME) that the Defendant admits he intends to engage in is the kind of annoyance and oppression that the protective order is meant to protect against. *Id.* at 11. That dissemination was an attempt to force her to drop her claims under a threat of ruining her career.

### C. Defendant's Opposition[1]

Dahlberg asserts that he does not oppose the entry of a limited Protective Order in this case but explains that Willett's proposed order limits his ability to defend his claims and pursue his counterclaims. Dkt. No. 67 at 2. He first argues that Willett did not meet the burden of obtaining the "extremely broad" Protective Order she seeks. By filing a lawsuit that references her alleged physical and mental health issues, Willett placed those facts "front

---

[1] Dahlberg filed his Opposition to the Renewed Motion five days late, without concomitantly filing a Motion to Extend the Time to excuse the late filing. Plaintiff then filed a Motion to Strike. Dkt. No. 49. The Court granted in part and denied in part the Motion to Strike, ruling that a Motion for an Extension was required if a document was filed beyond a deadline, and permitted the Defendant to file such a motion. The Court granted Dahlberg's Motion to Extend after full briefing, Dkt. No. 56, and Dahlberg refiled his Opposition. Dkt. No. 67.

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 6

and center for the public." *Id.* at 4 (citing *Estate of Gifford by Gifford v. Operating Eng'rs 139 Health Benefit Fund*, 678 F. Supp. 3d 1046, 1059 (E.D. Wis. 2023)).

Second, he argues that the VIBME was "statutorily authorized to have Willett's medical records and the issue goes directly to her damages claims." *Id.* at 5. As a medical professional licensed in the Virgin Islands, Plaintiff contended that her injuries limited her ability to earn income. Dahlberg asserts that she made material misrepresentations to the VIBME and therefore whether she would be qualified to serve as a doctor goes directly to her claim for damages: if she should never have been licensed, that would materially affect her claim that he compromised her ability to earn income/caused her damages. *Id.* Thus, it was imperative that Dahlberg present Willett's medical records to the VIBME so they can advise whether she improperly withheld information pertaining to her licensure and whether those facts and her medical history could have resulted in a denial of licensure. *Id.* at 5-6. Further, significant public policy concerns were at play, since asking the Court to preclude his sharing information with the VIBME would undercut the ability of that agency to do its job. As an example, Defendant asks whether the Court would entertain a request to preclude a defendant from sharing the fact that a pilot lied about partial blindness to the Federal Aviation Administration ("FAA"). *Id.* at 6.

Dahlberg states he "does not oppose maintaining confidentiality as to medical or financial records of the parties" but needs to share these agreements with potential witnesses such as licensing boards as well as law enforcement or other government agencies dealing with child welfare. *Id.* at 7. He also has no issue with his experts maintaining

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 7

confidentiality but, again, does not consent to being required to obtain such an agreement

from government agencies or outside witnesses who "may have their own needs and use for

this information independent of this litigation." *Id.* Dahlberg's disclosure of Willett's history

of substance abuse and mental health issues to the VIBME should not be objectionable since

the agency would be entitled to that information regardless of whether Willett filed a lawsuit,

and cites local statutes regarding the VIBME's powers. *Id.* at 8-9.

Third, the children's medical records were pertinent to Willett's claims of injury. Two

of the children alleged she subjected them to physical abuse after she alleged Dahlberg

injured her, which would undercut her allegations of injury. *Id.* at 9-10. She asks the Court to

limit disclosure of those records to law enforcement agencies that "request" the information.

But Dahlberg was legally obligated to report his suspicions of child abuse, as noted in the

Court's April 30, 2025 Order (Dkt. No. 43 at 8); Willett's "request" flies in the face of those

obligations. Further, the children's medical records were not Willett's property. *Id.* at 10.

Dahlberg opposes a number of other provisions in the proposed protective order,

generally arguing that Willett failed to identify any specific harm resulting from the absence

of the protections—both substantive (relating to the categories of material covered and

scope of the order) and procedural (relating to how the order would be effected). *Id.* at 10-

13. He adds that *Mahoney* and *Wallace* do not support Willett's contentions. *Id.* at 13-14.

Plaintiff did not file a Reply by the deadline set by the Court. *See* Dkt. No. 66 (providing

deadline for reply brief).

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 8

## DISCUSSION

### I.    Renewed Motion for Protective Order

### A.  Applicable Standard

Federal Rule of Civil Procedure 26, governing discovery, provides in pertinent part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(c) permits a party to move for a protective order to shield it from "annoyance, embarrassment, oppression or undue burden or offense," and provides various ways the court may limit the disclosure of such information during the discovery process. Fed. R. Civ. P. 26(c)(A)-(G). Included among the circumstances in which a party could move for a protective order was if the party sought to "forbid[ ] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1)(D). "The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information." 8A Charles Alan Wright, et al., *Federal Practice & Procedure Civil* § 2043 (3d ed. 1994). Besides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the ground that it would be harmed by its disclosure. *Id. see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) ("good cause must be demonstrated to justify the order.").

Good cause means "that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity." *Pansy,* 23 F.3d at

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 9

786. (internal quotation marks omitted); *see also id.* at 786-87 (proponent of the protective order shoulders "[t]he burden of justifying the confidentiality of each and every document sought to be" covered by a protective order). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning' do not support a good cause showing." *Id.* (quoting *Cipollone v. Liggett Grp., Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986). In assessing whether good cause exists, "federal courts have generally adopted a balancing process" that "balance[s] 'the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled.'" *Id.* at 787 (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 433–35 (1991)). Courts consider a number of factors when engaged in the good cause balancing process:

> (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Arnold v. Pa. Dep't of Transp.*, 477 F.3d 105, 108 (3d Cir. 2007). "The District Court is best situated to determine what factors are relevant to any given dispute," *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.,* 924 F.3d 662, 671 (3d Cir. 2019) (internal quotation marks omitted), and has "broad discretion over the scope of a protective order." *RIG Consulting, Inc. v. Rogers*, No. 23-cv-1286, 2024 WL 4608354, at *4 (W.D. Pa. Oct. 29, 2024).

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 10

### B. Application

Plaintiff's proposed Protective Order seeks to protect three general areas of information that will be produced in discovery: medical records (including psychological records), financial records, and records related to the parties' children. She also seeks to limit access to that information by third parties—with the main disagreement being whether the Defendant may provide Plaintiff's medical records to the VIBME.

### 1. What Constitutes "Confidential Information"

#### a. The Parties' Medical Records

The parties agree that their medical records (including psychiatric, psychological treatment, HIV/AIDS, Sexually Transmitted Disease, Mental Health treatment, or substance abuse treatment) constitute confidential information.

#### b. The Parties' Financial Information

As to the parties' "financial information" being included in the definition of "Confidential Information," the paragraph in Willett's initial proposed Protective Order entitled "Definition of Confidential Information" includes "confidential financial information," and describes such information, inter alia, as any "non-public business record, report or information of or regarding the Plaintiff or Defendant or any affiliated company that is confidential or privileged." Dkt. No. 47-1, ¶ 2. In her edited version of the Protective Order, Dkt. No. 47-3, the paragraph following "Definition of Confidential Information" is entitled "Identification of Confidential Information or Trade Secret." That paragraph begins, "Each Party shall designate to the other Parties which materials are considered confidential,

such as tax returns or confidential financial information." Dkt. No. 47-3 ¶ 3. But Willett

provides no definition of what "financial information" she wishes to keep confidential (much

less whether the references to "non-public business record" or "affiliated company" are even

applicable[2]) and why. In her Renewed Motion, she never mentions, much less argues, why

undefined "financial information" should be protected by the Protective Order. Having failed

to define the phrase, Willett failed to set forth, with specificity, the "clearly defined" injury

she would experience if such information is not protected, and failed to meet her burden to

show "good cause." *Pansy*, 23 F.3d 786, 787

For his part, while Dahlberg states in his Opposition that he "does not oppose

maintaining confidentiality as to medical or financial records of the parties," Dkt. No. 67 at 7,

all of his edits to Plaintiff's proposed Protective Order excise "financial information" from the

definition of "Confidential Information"—Dkt. No. 47-2, ¶ 2. Pursuant to Defendant's

approach, only medical records would be considered "Confidential Information" covered by

the Protective Order.

The Court agrees with Dahlberg that Willett has not satisfied the good cause standard

to include "financial information" as Confidential Information. However, the Court will

exercise its discretion to include the parties' federal and state tax documents in the definition

---

[2] It appears that Plaintiff has used a prior protective order as a template for the proposed Protective Order in this case, because references to "trade secrets"—which are clearly inapplicable here—appear throughout the proposed order. The reference to "affiliated company" may also be inapplicable in this case, raising unnecessary questions as to what Plaintiff intended by including it. The Court urges parties to proofread carefully their proposed Protective Orders, particularly where, as here, so many issues are in dispute.

of Confidential Information, as there can be no serious dispute that such records should be confidential.

### c.    The Children's Medical Records

The last category of material that Willett seeks to include under the definition of "Confidential Information" consists of the medical records of Willett's and Dahlberg's minor children. Willett does not argue that she would suffer any particularized injury from exposure of this information. She asserts only that it is not "relevant" to this litigation and is a matter for the local court that is deciding custody matters. Dkt. No. 47 at 5, 6. Dahlberg contends, essentially, that Willett has no standing to include these records in the Protective Order because they do not belong to her. He adds that the records are pertinent to Willett's claimed injuries in this action because two of the children's assertions that she physically abused them—after she was allegedly physically impaired from Dahlberg's assault—would undercut her allegations of injury. Dkt. No. 67 at 9-10. Defendant's main contention—addressed below—is that the records should be shared with law enforcement, given that they showed Willett's abuse of the children. *Id.* at 10.

The Court will exercise its discretion to include the children's medical records under "Confidential Information" in this case. Medical records generally are subject to protective orders; the fact that the parties contemplate using the children's medical records in this proceeding, where the children have no entity to represent their interests, does not prevent the Court from protecting those interests. "Nonparties' medical information is precisely 'the kind of information that courts will protect.'" *Davis v. Elwyn, Inc.*, No. 20-cv-5798, 2021 WL

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 13

4902333, at * 4 (E.D. Pa. Oct. 20, 2021) (quoting *Moore v. CVS Rx Servs., Inc.*, 660 F. App'x 148,

153 n.4 (3d Cir. 2016)). The Court will therefore include the children's medical records in

the definition of "Confidential Information."

In sum, the "Definition of Confidential Information" paragraph in the Protective Order

that the Court will issue in this case shall read:

> As used herein, the term "Confidential Information" means information or
> documents of any kind pertaining to any contract, agreement, medical records,
> psychiatric, psychological treatment, HIV/AIDS, Sexually Transmitted Disease,
> Mental Health treatment, or substance abuse treatment of any Party and the
> children of the parties. "Confidential Information" also includes the parties'
> federal and state tax return documents. "Confidential Information" shall refer
> to all such designated information, whether revealed during a deposition, in a
> document, or by production of tangible evidence or otherwise. The parties
> agree that this Agreement does not prevent or limit the ability of either Party
> to apply redactions to the following types of data in documents which may be
> designated as confidential: social security numbers, passport numbers,
> personal financial account numbers, personal taxpayer identification
> numbers, names of minors, dates of birth, home addresses, driver's license
> numbers, and any similar sensitive personal information.

## 2. Third Party Access to Confidential Information

The main sticking point between the parties is whether third parties may have access

to Plaintiff's and the children's medical records, as set out the paragraph of Plaintiff's

proposed protective order entitled "Access to Confidential Information." Dkt. No. 47-1.

### a. Access to the Children's Medical Records

Willett states that she "accepted Defendant's addition that such confidential

information could be provided to any law enforcement agency, *upon proper request*, in any

jurisdiction, any Child Protective Services agency in any jurisdiction, and any investigation

associated therewith (which such proceedings are by their very nature confidential and

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 14

shared with hospitals or other medical provider services associated with non-retained expert opinions)." Dkt. No. 47 at 6 (emphasis added). Dahlberg objects to the limitation that these records could be disclosed only to law enforcement agencies that "request" them. Dkt. No. 67 at 10. He further argues that he is legally obligated to disclose evidence of child abuse to law enforcement (citing Florida Statutes). *Id.* He contends that he will not consent to "any attempt to preclude him from sharing information with law enforcement or other government agencies dealing with child welfare." *Id.* at 7.

Although Willett stated in her memorandum that she agreed that "Confidential Information" could be shared with, inter alia, law enforcement agencies "upon proper request," Dkt. No. 47 at 6, her draft of the "Access to Confidential Information" paragraph in response to Dahlberg's edits, Dkt. No. 47-3, does not contain that caveat. Willett adopted most of the additions offered by Dahlberg (including subparagraphs (g), (h), and (i) below), which expanded the entities with whom Confidential Information could be shared. Given this agreement, the "Access to Confidential Information" paragraph will read:

> Persons entitled to have access to Confidential Information produced by another Party shall be restricted to (a) the counsel for each Party who are charged with the responsibility for, or are actively engaged in, preparation for trial or the trial of this action, and employees of such counsel; (b) Plaintiff; (c) individual Defendant and representatives of Defendant Christopher Dahlberg; (d) persons associated with the Parties to whom the disclosures must reasonably be made for the purpose of preparing for deposition or other proceedings herein; (e) expert witnesses of any party, subject to the requirements of Paragraph 6 below; (f) any mediator for purposes of a court-ordered mediation; (g) any member of law enforcement in any jurisdiction; (h) any child protective services agency in any jurisdiction and any investigator(s) associated therewith; and (i) any hospital or medical service provider in any jurisdiction.

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 15

Dkt. No. 47-3 ¶ 5. Dahlberg's additional edit that Willett did not agree to—permitting access to Confidential Information to "(j) any governmental agency, in any jurisdiction, dealing with professional licensing or professional oversight," Dkt. No. 47-2 ¶ 4—is discussed below.

**b.  Access to Willett's Medical Records by the VIBME**

Willett asserts that sharing her medical records with the VIBME would taint her reputation and cause her annoyance and oppression. Dkt. No. 47 at 6, 7, 11. She views Dahlberg's desire to share her medical records with the VIBME as an attempt to "weaponize this lawsuit" that she filed because of serious physical injury she suffered and to cause her to drop her claims "under threats of ruining her career." *Id.* at 6. Dahlberg responds that Willett must meet the "good cause" standard and she did not cite any "specified harm" she would suffer if this information were disclosed to the VIBME. Dkt. No. 67 at 4.  He posits that Willett's medical records must be shared with the VIBME so he can defend against her claims that her injuries—which he allegedly caused—triggered her financial harm and impacted her ability to earn income. Dahlberg reasons that, given Willett's purported misrepresentations to VIBME concerning her medical and psychological history, she should not have been licensed as a doctor in the first place, and therefore she could not show that he compromised her ability to earn income and caused her damages. *Id.* at 5.

Willett has shown good cause. She has articulated a specific harm she would suffer if her medical records were shared with the VIBME: at the very least, the tainting of her professional reputation before her peers in the small medical community of the Virgin Islands. Whatever her medical records contain, the spectre of any person's medical records

being shared gratuitously with people who are not parties to litigation would be embarrassing at the very least. But added to that, sharing such intimate details with peers, who also happen to be members of the licensing body that has a say over one's professional status would be even more concerning. And given the fact that, at least to the Court's knowledge, the VIBME does not have an open or ongoing investigation into Willett's licensure or even any complaint about her practice of medicine before them, and where they have not affirmatively sought those records, providing them access to those records could certainly have the possibility of tainting Willett's reputation. Further, because the records would be provided outside of the VIBME's normal procedures of receiving complaints and conducting investigations, the uncertainty of VIBME's possible response and any possible repercussions resulting from such access would be, in the Court's view, "oppressive."

Moreover, when the Court engages in the good cause balancing process that "balance[s] 'the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled,'" *Pansy,* 23 F.3d at 787, it is clear that the medical records should not be shared with the VIBME. Assessing these factors (which neither party did in their briefing), the Court will decline to allow Willett's medical records to be shared with the VIBME or "government agencies in any jurisdiction dealing with professional licensing or professional oversight." Dkt. No. 47-2 ¶ 4.

As to "the interest in privacy of the party seeking protection," *Arnold*, 477 F.3d at 108, the only point the parties have actually agreed on is that their medical records should be confidential, and that they each have an interest in maintaining the privacy of those records.

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 17

Whether the information being provided to VIBME is proposed for a legitimate or improper purpose is a closer question. First and foremost, as stated above, the VIBME is not a party to this litigation, and Willett's licensing as a medical doctor is not an issue in any of the causes of action in the Complaint or Counterclaims. The only reason it has been raised is as a theory for Dahlberg to defend against Willett's assertion of damages. He wants to submit Willett's medical records to the VIBME so they can

> advise whether she 1) improperly withheld information pertaining to eligibility to obtain and maintain licensure, and 2) whether those facts and medical history she did withhold could have resulted in a denial of her licensure. In short, if she never should have been licensed, she cannot sustain a claim that her alleged injuries have adversely affected her ability to earn income as a medical practitioner.

Dkt. No. 67 at 5-6.

This damages argument strikes the Court as confusing. First, it appears that Dahlberg wants the VIBME to issue an advisory opinion on Willett's licensure based on her medical records where no investigation is ongoing (to the Court's knowledge). Second, the damages theory is counter-factual, as it attempts to graft a possible future or current finding (withdrawal of Willett's medical license or other discipline) onto the past (when the injuries allegedly occurred), to argue that Willett's income that she actually earned should not have been earned at all. But Willett had actually been licensed as a doctor and was being paid when the injuries occurred, and an opinion now cannot change that past fact. Third, the theory is based on a number of contingencies: that the VIBME would conclude based only on these records rather than a full investigation that some discipline was or would have been appropriate, and that the appropriate discipline would be the revocation of her license

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 18

(rather than a less severe alternative), making the theory speculative. And a larger question is whether it would be proper for the VIBME to provide an advisory opinion in the first instance, based on receiving unasked for confidential medical records from a district court case, provided by a husband engaged in a fierce post-divorce/custody battle, in a situation where no current case or investigation has been opened against Willett. Under these circumstances, Dahlberg's request to share Willett's medical records with the VIBME appears to be geared more to personally injure Willett and her ability to earn income, and the Court concludes that it is sought for an improper purpose. Thus, this factor weighs against providing access to the VIBME.

Three additional factors—whether the information sought is important to public health and safety, whether the party benefitting from the order of confidentiality is a public entity or official, and whether the case involves issues important to the public—weigh against providing access of Willett's medical records to the VIBME. This case involves an individual plaintiff suing an individual defendant, as well as a counter-suit, and neither individual is a public figure. "[I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality." *Pansy,* 23 F.3d at 788. While there is a tangential connection to public health, as Willett is a licensed medical provider, none of the causes of action involve Willett's licensure or her competency to practice medicine, and there is no complaint against her regarding her professional competency. Dahlberg notes that "asking this Court to preclude the sharing of this information with the VIBME undercuts the ability

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 19

of that agency to do its job," and likens this situation to one where a court would not share

the fact that a pilot lied about his partial blindness to the FAA. Dkt. No. 67 at 5-6. But, while

dramatic, this comparison is not helpful, as Dahlberg provides no case law or statute that

would support his position that a court must permit a party to provide such medical records

to the FAA, produced in discovery in a federal case. Dahlberg sets out a number of provisions

governing the VIBME in the Virgin Islands Code.[3] Dkt. No. 67 at 7-8. But that statute is

qualitatively different from, for example, the Florida statute governing the reporting of child

abuse, which requires any person having knowledge of such abuse to report it. Dkt. No. 43 at

16 n.3. The VIBME statute contains no requirement that a person having "adverse

information" regarding a licensee must report it. Rather, once such information is placed

before it, the VIBME may (or may not) review and investigate it and take appropriate

disciplinary action. 27 V.I.C. § 3(7), (9).

The last factor—whether sharing of the information among litigants would promote

fairness and efficiency—is not quite apt, because the information—Willett's medical

records—*would* be shared among litigants. The question is whether sharing it with VIBME

---

[3] Dahlberg sets out statutes that describe how the VIBME regulates the practice of medicine
and the powers given to it to effect its mission. Dkt. No. 67 at 8-9. For example, it can approve
or deny applications for license renewal based on the evaluation of adverse information
relating to an applicant's fitness, performance, or practice; it can receive, review, and
investigate complaints against practitioners and take appropriate disciplinary action; it can
review and investigate reports from law enforcement agencies, health care organizations
and other entities having information pertinent to the performance of licensees. 27 V.I.C. §
3(7), (9), (10). Further, physicians licensed by the VIBME are deemed to have given consent
to submit to mental or physical examination or a chemical dependency evaluation, and to
have waived all objections to the admissibility of the results *in hearings before the Board*. 27
V.I.C. § 10 (emphasis added).

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 20

as a third party would promote fairness and efficiency. It would not. The Court presumes that, pursuant to an actual VIBME investigation, the subject of that investigation has a number of due process protections and the process would take some time to be concluded. Providing unasked-for medical records outside of any investigation would seem to short-circuit the VIBME's process and, if an actual investigation eventually did take place, may have the potential to prejudice it, in addition to having the potential of creating a distraction in this case. The Court here points out an obvious fact: If Dahlberg believes the VIBME should know of Plaintiff's alleged medical and psychological conditions that may affect her licensure, and any purported misstatements she made on her application, he is and has been free for some time to bring such a complaint so that VIBME may explore those allegations on its own terms and according to its own procedure. This factor also weighs against providing VIBME access to Willett's medical records.

As the Third Circuit opined, "[o]ne interest which should be recognized in the balancing process is an interest in privacy. It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection." *Pansy*, 23 F.3d at 787. All of the *Arnold* factors counsel against providing VIBME access to Willett's medical records, and thus the Court will not permit the Protective Order to allow them to be shared with that third-party.

### 3. Additional Disputes as to Contents of the Protective Order

The parties dispute the wording of a number of other paragraphs, or whether certain paragraphs should be included in the Protective Order in the first place. These issues concern

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 21

procedural aspects related to how confidential information will be handled during the case. Given that the "good cause" standard is directed to substantive matters—whether a Protective Order should be issued in the first place or the scope of that Order, *Pansy*, 23 F.3d at 786-87, the Court declines to use that standard to resolve the remaining disputes, and will exercise its "broad discretion" to resolve them. *RIG Consulting, Inc.*, 2024 WL 4608354, at *4.

In his draft of the Protective Order, Defendant crossed out Plaintiff's proposed paragraph entitled "Identification of Confidential Information or Trade Secret." Dkt. No. 47-2 at 2. This paragraph concerns how confidential documents should be identified, and the procedure to follow if a party determines that something should have been designated confidential but was not. Since Dahlberg has not explained why he removed this paragraph, which does not strike the Court as being overly expansive or problematic, the Court will include it in the final Protective Order, excising the term "Trade Secret," as irrelevant.

The only edits Dahlberg made to the paragraph entitled "Protection of Confidentiality," was to replace the term "Confidential Information" with "Medical Records." Dkt. No. 47-2. The Court will include the phrase "Confidential Information" from Plaintiff's proposed Protective Order, Dkt. No. 47-1, as redefined by this Order, and strike the references to "Medical Records" in this paragraph and throughout the Order.

Dahlberg crossed out in its entirety the paragraph entitled "Conditions to Access to Confidential Information." Plaintiff summarizes the text of the paragraph (any expert must read the confidentiality agreement and agree to be bound by it; counsel shall maintain a list of all persons it provides confidential information to and provide opposing party access to

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 22

the list) but does not argue why it should be included. Dkt. No. 47 at 7. Defendant responds

that Plaintiff failed to identify the necessity of this expansive request and that it was more

than sufficient if the Court determined that it was incumbent on the parties to keep the

information confidential. In addition, providing a list invades the work-product privilege of

the attorneys. Dkt. No. 67 at 10-11. The Court will keep the first sentence, to make clear that

experts are bound by the terms of the Protective Order, but will edit it to remove the

requirement that the expert must agree to be bound by it in writing and that counsel must

maintain a list of individuals to whom he or she has disclosed Confidential Information

(which appears to encompass more than experts) and, upon request, provide that list to the

Court for in camera inspection. In the Court's view, this resolution strikes a proper balance.

The paragraph entitled "Limitations on Copying" limits the copying of Confidential

Information to the parties permitted access and limits its use to only this matter. Willett

states that Dahlberg's draft limited it only to medical records. Dkt. No. 47 at 7. Dahlberg

contends that Willett failed to identify the necessity of this expansive request. Dkt. No. 67 at

11. The Court does not view this as an "expansive request" and will include it in the

Protective Order.

The paragraph entitled "Depositions" provides that any deposition at which

Confidential Information is disclosed shall be taken as if in camera, without any persons

present other than those allowed access, the deposition witness, and court reporter.

Dahlberg argues that Willett failed to identify the specific harm resulting in the absence of

protection and therefore failed to carry her burden. Dkt. No. 67 at 11. This paragraph sets

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 23

forth procedural, not substantive terms, articulating how the provisions of the Protective

Order shall be followed. Thus, it is a matter for the Court's discretion rather than an issue

whether Plaintiff has shown good cause. The Court will include this paragraph in the

Protective Order as reasonably geared to protecting confidentiality.

The paragraph entitled "Confidential Information to be Filed with Court under Seal"

describes the process for physically filing Confidential Information with the Court. Willett

describes what the Defendant seeks to excise or change but does not otherwise advocate for

why this procedure should be followed. Dkt. No. 47 at 7-8. Dahlberg notes that Willett did

not identify any specific harm from the Court not adopting this request. He also contends

that the language is antiquated because documents are filed under seal electronically and

only with leave of Court. Thus, there is no need to give Willett an additional notice prior to

filing Confidential Information. If documents are designated by the Court as confidential,

they will be filed under seal on the record. Dkt. No. 67 at 11. The Court agrees with Defendant

and will utilize his edits to this paragraph from Dkt. No. 47-2 (changing "Medical Records" to

"Confidential Information").

As to the paragraph entitled "Time for Designation of Confidential Information," the

paragraph entitled "Dispute as to Confidentiality," the paragraph entitled "Public

Information," and the paragraph entitled "Other Persons," Willett asserts that Dahlberg

seeks to limit the Confidential Information to medical records. Dkt. No. 47 at 8. Dahlberg

again responds that Willett failed to carry her burden by showing a specific need for an order

addressing these issues. Dkt. No. 67 at 12. The Court will include these procedural

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 24

paragraphs in the Protective Order (keeping the term "Confidential Information" rather than Defendant's change of that term to "Medical Records"). The parties do not dispute the paragraphs entitled "Other Persons" (other than Dahlberg replacing the term "Confidential Information" with "Medical Records"), "Trial," and "Amendment." They will be included in the Protective Order.

The paragraph entitled "Non-Sharing Agreement" provides that Confidential Information will not be shared with third parties and will not be used for any other purpose besides this litigation. Defendant deleted this entire paragraph, arguing that Willett has not shown any specific harm resulting in its absence from the Protective Order. The Court views this paragraph as essentially reiterating the "Access to Confidential Information" paragraph discussed above, and resolves the dispute in the same way. As a result, the Court will include this paragraph in the Protective Order.

Defendant objects to the paragraphs entitled "Voluntary Waiver" and "Retained Jurisdiction" that Willett did not identify specific harms that would result from not including these paragraphs. These paragraphs reflect procedural terms for effecting the Protective Order, and the Court will include them.

The paragraph entitled "Disposition on Termination of Action" details how the Confidential Information will be treated once the instant action concludes. The parties' dispute centers on subsection (d). The first sentence of that paragraph states that the parties "agree not to disclose the substance of any Confidential Information revealed to it by the Designating Party." Defendant did not object to that provision (other than changing

*Willett v. Dahlberg*
1:24-cv-00024-WAL-EAH
Order
Page 25

"Confidential Information" to "Medical Records"). However, the Defendant crossed out the remaining text in that paragraph, providing that counsel of record receiving Confidential Information may retain a copy of all pleadings, motions and trial briefs, discovery requests and responses, deposition and trial transcripts, trial exhibits and any work product containing Confidential Information provided that any Confidential Information contained therein would remain subject to the protections of the Protective Order. His argument, again, is that Willett did not show specific harm. This is a reasonable provision and the Court will include subsection (d) in its entirety in the Protective Order.

Given the contested issues involving the proposed Protective Order and the numerous edits, the Court will issue the Protective Order, incorporating the rulings herein.

## CONCLUSION

Accordingly, it is hereby **ORDERED:**

1. Plaintiff's Renewed Motion for Entry of Confidentiality and Protective Order, Dkt. No. 46, is **GRANTED IN PART AND DENIED IN PART**, as set forth in this Order**.**

2. The Court will issue the Protective Order that will govern this case under separate cover.

ENTER:

Dated: July 2, 2025                    /s/ Emile A. Henderson III
                                       EMILE A. HENDERSON III
                                       U.S. MAGISTRATE JUDGE