**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| KATHERINE WILLETT,<br><br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>CHRISTOPHER DAHLBERG,<br><br>    Defendant/Counter-Plaintiff.<br>_____ | 1:24-cv-00024-MEM-EAH |

TO:    Lee J. Rohn, Esq.
           David J. Cattie, Esq.

## ORDER

**THIS MATTER** comes before the Court on the Motion to Enforce Discovery Order and Quash Subpoena Duces Tecum to the Virgin Islands Board of Medical Examiners, filed by Plaintiff/Counter-Defendant Katherine Willett on July 21, 2025. Dkt. No. 80. In the motion, Willett seeks to quash the subpoena duces tecum that Defendant/Counter-Plaintiff Christopher Dahlberg, served on non-party V.I. Board of Medical Examiners ("VIBME") *Id.* Dahlberg filed an opposition on July 28, 2025, Dkt. No. 85, and Willett filed a reply, Dkt. No. 97. The VIBME has not responded to the subpoena. For the reasons that follow, the Court will grant the motion in part and deny it in part.

### THE PARTIES' ARGUMENTS

This is the third in a series of motions filed by Plaintiff Willett seeking protection from discovery of documents that Defendant Dahlberg seeks to share with or elicit from the VIBME, or otherwise relate to it, regarding Willett, a licensed physician in the Virgin Islands. On July 2, 2025, the Court granted in part and denied in part Plaintiff's initial motion for a protective order ruling, inter alia, that Dahlberg could not share Willett's medical records

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 2

produced in discovery with the VIBME. Dkt. No. 73. The second Order, issued on July 25, 2025, denied Willett's motion for a protective order and directed her to respond to certain requests for admissions that primarily related to mental health issues and whether she had divulged them on her initial application for licensure with the VIBME. Dkt. No. 83. The current motion, also filed by Willett, seeks to quash the subpoena that Dahlberg served on the VIBME seeking material in Willett's VIBME file. Dkt. No. 80. Both parties point to the prior Orders as supporting their positions regarding the instant motion.

I. **Motion to Enforce/Quash**

In the Motion to Enforce/Quash, Willett explains that, on July 2, 2025, Dahlberg filed a Notice of Intent to Serve Subpoena Duces Tecum on the VIBME (Dkt. No. 72), pursuant to Fed. R. Civ. P. 45(a)(4), requesting that the VIBME produce

> All records, applications, reports, filings, disciplinary reports, of files regarding KATHERINE WILLETT (formerly Katherine Dahlberg) regarding her licensure as a medical doctor and her application for licensure, including all documents filed in support of her license and application therefore.

Dkt. No. 72-1. The subpoena directed VIBME to produce the material at the law offices of Dahlberg's counsel, David Cattie, Esq., on August 15, 2025 at 5:00 a.m. *Id.*

Willett propounds three arguments seeking to quash the subpoena. She first contends that her VIBME file is not relevant. Dkt. No. 80 at 3. She cites the Court's July 2, 2025 Order, Dkt. No. 73, that granted in part and denied in part her Renewed Motion for a Protective Order. The main point of contention in the Renewed Motion concerned third-party access to confidential information—in particular, whether Dahlberg could provide Willett's medical

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 3

records to the VIBME. Dahlberg raised that issue generally in connection with a damages theory he intended to pursue. Dkt. No. 67 at 5, 7. The Court held that Willett had shown good cause for protection against that third-party access:

> She has articulated a specific harm she would suffer if her medical records were shared with the VIBME: at the very least, the tainting of her professional reputation before her peers in the small medical community of the Virgin Islands. Whatever her medical records contain, the spectre of any person's medical records being shared gratuitously with people who are not parties to litigation would be embarrassing at the very least. But added to that, sharing such intimate details with peers, who also happen to be members of the licensing body that has a say over one's professional status would be even more concerning. And given the fact that, at least to the Court's knowledge, the VIBME does not have an open or ongoing investigation into Willett's licensure or even any complaint about her practice of medicine before them, and where they have not affirmatively sought those records, providing them access to those records could certainly have the possibility of tainting Willett's reputation. Further, because the records would be provided outside of the VIBME's normal procedures of receiving complaints and conducting investigations, the uncertainty of VIBME's possible response and any possible repercussions resulting from such access would be, in the Court's view, "oppressive."

Dkt. No. 73 at 15-16. Willett further quoted the Order, providing that "Willett's licensing as a medical doctor is not an issue in any of the causes of action in the Complaint or Counterclaims." *Id*. at 17. She argues in the instant motion that "[i]t is axiomatic that if Willett's licensing is not relevant then her VIBME File pertaining to the issuance of her license is not relevant." Dkt. No. 80 at 3. She notes that, in the Order, the Court termed Dahlberg's damages theory "counterfactual" and observed that Dahlberg appeared to be motivated to personally injure Willett. She therefore seeks to quash the subpoena as seeking irrelevant information outside the scope of discovery. *Id*. at 4.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 4

Willett's second argument is that Dahlberg seeks her VIBME file to embarrass and harass her. *Id.* She again quotes the July 2, 2025 Order, where the Court opined that "Defendant's intentions with respect to Plaintiff's licensing were 'geared more to personally injure Willett and her ability to earn income, and the Court concludes that it is sought for an improper purpose.'" *Id.* (quoting Dkt. No. 73 at 18). Willet asserts that the subpoena was issued for an improper purpose. *Id*.

Third, Willett asserts that her VIBME file contains privileged and protected information and must be quashed. *Id*. at 4-5. The Virgin Islands statutes governing the VIBME provide, inter alia, that:

> [e]very communication made by or on behalf of any person, institution, agency or organization to the Board or to any person designated by the Board relating to an investigation or the initiation of an investigation, whether by way of report, complaint or statement, is privileged. No action or proceeding, civil or criminal, shall be permitted against any such person, institution, agency or organization by whom or on whose behalf such a communication was made in good faith.

27 V.I.C. § 13. All of the communications in Willett's file that were made as a report, complaint, investigation or otherwise are privileged, and Dahlberg is not entitled to this information. In addition, it is not relevant to these proceedings. *Id.* at 5.

## II.    Defendant's Opposition

In his opposition, Dahlberg states that Willett has no standing to quash the subpoena and, even if she had, she failed to meet her burden. Dkt. No. 85 at 1. In particular, the party moving to quash bears the burden of demonstrating that it has standing. Willett did not argue that issue in her motion to quash, and the Court should not entertain any such arguments

she may make in her reply. *Id.* The party moving to quash also bears the burden of establishing that a privilege attaches to the subpoenaed documents, after which the burden shifts to the party seeking disclosure to establish that an exception to the privilege exists to allow the disclosure. *Id*. at 2. While Willett offered no standing argument, she did claim that the requested documents were privileged under Rule 45(d)(3)(A)(iii) because VIBME had a statutory duty to determine a person's initial and continuing qualifications to practice medicine under 27 V.I.C. § 3(b). Further, § 13 provides that communications relating to an investigation were privileged, but Willett failed to acknowledge that the "privilege" referred to in that section applied to investigations by way of report or complaint, not to applications or applicants. *Id.* at 3. The § 13 privilege provided that a person filing a complaint (against a health care practitioner) were immune from suit as long as that person acted in good faith—not that the documents would not be subject to a subpoena. *Id.* Dahlberg would not object to any complaints against Willett made to the VIBME being subject to a protective order and to redaction to remove any identifying information of any complainant. *Id.* The statutory sections dealing with licensure grant no privilege to the applicant or her application, citing 27 V.I.C. §§ 4-5; Willett has no standing and has articulated no basis to quash. *Id.*

Second, the subpoenaed documents are relevant and discoverable. *Id.* at 4. The premise of Willett's motion is that the Court's July 2, 2025 Order applied and served as a basis to quash. *Id.* But when the Court denied her second motion for a protective Order, it dispensed with that premise, holding that the July 2, 2025 Order had a very limited purpose—preventing Dahlberg from sharing Willett's medical records produced in

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 6

discovery with the VIBME; it did not address the scope of discovery in this case or address the propriety of other discovery requests that might refer to the VIBME. *Id*. at 5 (quoting Dkt. No. 83 at 18). Dalberg posits that just as inquiries into whether Willett made certain disclosures to VIBME are relevant into her credibility, "her application" to that Board is equally relevant. *Id*. Until that application is obtained, only Willett knows if she committed fraud in her application; if she made a misrepresentation, that goes to her credibility in this case. *Id.* at 5-6. Willett failed to carry her heavy burden and failed to establish standing, and thus the Court must deny her motion to quash. *Id*. at 7.

### III. Plaintiff's Reply

In her reply, Willett contends she has standing to quash the subpoena. Dkt. No. 97 at 2. She demonstrated standing in her initial motion because she argued the subpoena sought privileged documents under 27 V.I.C. § 13. *Id*. at 3-4. A case cited by Dahlberg, as well as numerous other cases, provide that a party's personal right to information in his employment file were protected by a constitutional right of privacy and was sufficient to confer standing, and a licensure application was a more invasive employment application. *Id*. at 4-5. Dahlberg's position that the "privilege" in § 13 provided only immunity from suit was unsupported. *Id.* at 5. On public policy grounds, communications to the VIBME should be privileged because there is no determination on their validity until they have been evaluated, similar to the process involving complaints against attorneys. *Id*. Dahlberg failed to establish an exception to the privilege exists, and did not attempt to establish an exception; he merely offered to subject the documents to the existing protective order and

redact identifying information. *Id*. at 6. But the documents are privileged, and Dahlberg's intentions were geared more to personally injure Willett and her ability to earn income. *Id.*

Willett next contends that the subpoena requesting the entirety of her VIBME file is a fishing expedition. Although Dahlberg argues that the file is relevant because it goes to her credibility, the file is not relevant to either party's claims or defenses and is not proportional to the needs of the case. *Id.* at 7-8. The cases relied upon by Dahlberg do not demonstrate how the file is relevant to Willett's credibility such that Dahlberg should be permitted to subpoena it (given that two of the cases permitting cross-examination of doctors on misstatements in their medical licensing applications were medical malpractice cases and the third was an employment discrimination case). *Id*. at 8.

As of the date of this Order, the VIBME has not responded to the subpoena.

## DISCUSSION

### I.   Relevant Provisions of the Federal Rules

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party may seek discovery from a party or nonparty—commanding the production of books, documents, electronically stored information, or tangible items in that person's possession, custody, or control—by serving a subpoena under Federal Rule of Civil Procedure 45. A "Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-cv-597, 2007 WL 2362598, *2 (D.N.J. Aug.

15, 2007) (citation modified); *see also Gov't Emps. Ins. Co. v. Trnovski,* No. 16-cv-4662, 2018 WL 5281424, at *2 (D.N.J. Oct. 23, 2018) ("Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b).").

Rule 45(a)(1) provides the requirements for service of subpoenas. Rule 45(d)(3) sets out the rule for quashing or modifying a subpoena. It provides, in pertinent part:

> **(3) *Quashing or Modifying a Subpoena.***
> **(A)** *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> **(i)** fails to allow a reasonable time to comply;
> **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
> **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> **(iv)** subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands. It is "well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion." *R.J. Reynolds Tobacco v. Philip Morris Inc.,* 29 F. App'x 880, 881 (3d Cir. 2002).

## II. Standing

Dahlberg served the subpoena on a non-party, the VIBME, not on Willett, and the VIBME has not opposed or otherwise responded to the subpoena. Rather, it is Willett who is challenging the subpoena through a motion to quash. Therefore, before turning to the merits

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 9

of the parties' arguments, the Court must first determine whether Willett has standing to quash the subpoena on this non-party.

"Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed." *Price v. Cnty. of Salem*, No. 22-cv-6042, 2024 WL 1006263, at *3 (D.N.J. Mar. 8, 2024) (citation modified). Standing, however, may be conferred on a party seeking to quash a subpoena when that party "claims a privilege or privacy interest in the subpoenaed information." *Houser v. PowerDot, Inc.,* No. 22-mc-00836, 2024 WL 3165486, at * 3 (M.D. Pa. June 24, 2024). This exception allowing third-party standing has been articulated in slightly different ways. *See, e.g., Estate of Dotson Through Douglas v. Gary W. Gray Trucking*. 2025 WL 2056863, at *2 (E.D. Pa. July 21, 2025) (the general rule that a party does not have standing to quash a subpoena served on a third party is subject to an exception where the party "claims some personal right or privilege in respect to the subject matter of the subpoena.") (citation modified); *Kida v. EcoWater Sys. LLC*, No. 10-cv-4319, 2011 WL 1883194, at *2 (E.D. Pa. May 17, 2011) ("the movant's personal right or interest in the documents themselves confers standing."). Examples of the requisite personal right, privilege, or privacy interest include: "the movant's financial or employment records or records of a criminal investigation of the movant," *Estate of Dotson,* 2025 WL 2056863, at * 2; "assertion[s] of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party," *Houser*, 2024 WL 3165486, at *3 (citation modified); an interest in one's personal identifying information, *Malibu Media, LLC v. Doe*, No. 15-1742, 2015 WL

5996319, at *2 (D.N.J. Oct. 14, 2015); the movant's medical and mental health records based on privilege and confidentiality of the records, *Carpenter v. Kloptoski,* No. 08-cv-2233, 2010 WL 126173, at *1 (M. D. Pa. Jan. 8, 2010).

The VIBME regulates the practice of medicine in the Virgin Islands, evaluating applicants for licensing, investigating complaints against practitioners, and taking appropriate disciplinary action. 27 V.I.C. § 3. The first sentence of Section 13 provides that if a person or entity makes a complaint, report, or communication to the VIBME regarding a medical practitioner's practice of medicine, those "protected communication[s]" are "privileged." 27 V.I.C. § 13(c). The second sentence of Section 13 provides that those persons or entities that make such privileged communications in good faith are protected from lawsuits. *Id.* Thus, under the statute, while Willett herself has no "privilege" in the contents of her VIBME file, at least to the extent that it may contain any complaints, reports, or statements by others that have initiated investigations or were made in ongoing investigations, all of those statements are nonetheless protected and confidential.

While Dahlberg asserts that the privilege applies to *investigations* by way of reports, complaints, or statements, not to applications or applicants, and the statute protects those persons from suit, Dkt. No. 85 at 3, the privilege actually applies to all of the *reports, complaints, and statements* in the file that comprise investigations. Because he is seeking those reports, complaints, and statements and those items are privileged, and because Willett has argued they are privileged, the Court concludes that Willett has properly asserted standing in the privileged communications that may (or may not) be contained in her file.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 11

But even if the privilege Willett asserts was required to be personal, and therefore did not apply, case law permits standing not only on the basis of privilege, but also on a personal right or privacy interest in the material sought to be produced. In this regard, the statutes governing the VIBME provide that "[a]ll the Board's final disciplinary actions and license denials, including related findings of fact and conclusions of law, shall be matters of public record," 27 V.I.C. § 9(g). But the statutes detail a wide variety of disciplinary actions that could be levied against a practitioner depending on the severity of the alleged impropriety. 27 V.I.C. § 8. They provide some measure of confidentiality if formal proceedings are not found to be warranted. For example, the VIBME could issue a "confidential, non-reportable letter of concern to a licensee when, though evidence does not warrant formal proceedings, the Board has noted indications of possible errant conduct by the licensee that could lead to serious consequences and formal action." 27 V.I.C. § 8(b).

So while any final disciplinary actions would already be matters of public record, 27 V.I.C. § 9(g), the VIBME file could contain reports that may consist of unfounded allegations that may not have resulted in any disciplinary findings on the public record or any action by the VIBME at all, or letters of reprimand that the statute provides are confidential. 27 V.I.C. § 8(b). Whatever the VIBME file may contain, it likely contains extremely sensitive and non-public, even statutorily confidential information. These kinds of documents are similar in nature to documents courts have determined confer standing on a party seeking to quash a subpoena on a third party. *See, e.g., Houser*, 2024 WL 3165486, at *3; *Carpenter*, 2010 WL 126173, at *1. The Court concludes that Willett has a privacy and personal interest in that

information, *Houser*, 2024 WL 3165486, at *3; *see also Kida*, 2011 WL 1883194, at *2 (noting that a party seeking to quash may have standing based on her relationship to the subpoena recipient or her interest in the documents sought), and that Willett has standing to challenge the subpoena served on non-party VIBME.

Moreover, the Court has found no case law, and Dahlberg has not pointed to any, that requires a party seeking to quash a subpoena served on a non-party to argue in its opening brief that it has standing to do so. Dahlberg's case law merely provides that the moving party has the burden to demonstrate standing—not that it has to be explicitly argued in an opening brief when a party challenges a subpoena issued to a non-party. A party may raise the issue in the opening brief, or the opponent may raise it in an opposition, prompting the court to address the issue. *See, e.g., Ramos v. Walmart, Inc.,* No. 21-cv-13827, 2023 WL 2327208, at *3 (D.N.J. Mar. 2, 2023) (in its opposition, defendant asserted, "as a threshold matter, that Plaintiffs lack standing to challenge the Employer Subpoenas because the obligation to respond to the document requests does not apply to them" and court then addressed standing issue); *Buckhead Meat Co. v. AEBB of Greenwich Corp.*, No. 19-cv-16766, 2022 WL 16708988, at *2 (D.N.J. Feb. 10, 2022) ("As an initial matter, because Defendants move to quash subpoenas served on a non-party, the Court must determine whether Defendants have standing to bring the present motion."). In her opening brief, Willett raised the issue of privilege, which is the sine qua non basis for asserting standing here. And even if Willett had not addressed standing in her reply, the Court concludes that she did not waive the argument and rejects Dahlberg's contention that she did.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 13

### III.  Whether the Subpoena Should be Quashed

Now that Willett's standing has been established, the Court examines the motion to quash according to the burden-shifting framework set out in case law. In *Paramo v. Aspira Bilingual Cyber Charter School,* No. 17-cv-3863, 2018 WL 4538422 (E.D. Pa. Sept. 21, 2018), after holding that the defendant had standing to quash a subpoena served on a third party, the court assessed the merits of the motion as follows:

> First, the subpoenaing party must show that its request falls within the scope of Rule 26. *Id.* Thus, a party may use a subpoena only to seek "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).
>
> If the subpoenaing party meets its burden, the burden shifts to the party opposing the subpoena to establish that Rule 45(d)(3) provides a basis to quash the subpoena. The burden of the party opposing the subpoena is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order.

*Id.* at *2 (citation modified). As indicated above, a Rule 45 subpoena must fall within the scope of proper discovery under Rule 26(b)(1). *Schmulovich*, 2007 WL 2362598 at *2.

Dahlberg argues that the subpoenaed documents are relevant and discoverable by first critiquing Willett's reliance on the July 2, 2025 Order that prohibited him from sharing Willett's medical records from the VIBME, not obtaining records from it. Dkt. No. 85 at 5. He then argues that Willett's licensing application to the VIBME[1] would be relevant to assess

---

[1] Dahlberg's opposition refers to Willett's "*application* for licensure" where "discovery into that *application* is required." Dkt. No. 85 at 6 (emphasis added); *see id.* at 5 ("her *application* to that Board is equally relevant.") (emphasis added). The Court interprets this language as seeking only Willett's initial application for licensure, not renewal applications—which is consistent with what Dahlberg's requests for admissions sought. *See, e.g.*, Dkt. No. 83 at 7

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 14

her credibility to determine if she made misrepresentations on it. Dkt. No. 85 at 5-7. Although Dahlberg did not go into detail about the "misrepresentations" he was referring to, the Court reads this argument in the context of his opposition to Willett's second motion for a protective order where Dahlberg propounded requests for admission that asked if Willett had failed to disclose mental health treatment and diagnoses on her initial VIBME application and argued that her answers would go towards her credibility. Dkt. Nos. 78-1; 79 at 9-11. Willett counters that her VIBME file (in its entirety) is not relevant to the claims and defenses in this case, and is a fishing expedition because, inter alia, Dahlberg does not know whether she made misrepresentations on her application. Dkt. No. 97 at 7-8.

For clarity of analysis, the Court will separate the subpoena's document requests into two components: (1) Willett's initial application for licensure, contained in the VIBME file; and (2) all other documents in the VIBME file, including documents that may have supported Willett's initial application for licensure.

### A. Willett's Initial Application for a Medical License

The Court agrees with Dahlberg that Willett's initial VIBME application may be relevant to issues of her credibility. As the Court observed in its July 25, 2025 Order, Dahlberg's requests for admission concerning whether Willett failed to disclose certain mental health treatments in her initial application to the VIBME related to credibility matters, which was "a proper area for discovery inquiries." Dkt. No. 83 at 18 n.4. While the

---

("Admit that in your initial application to the Virgin Islands Board of Medical Examiners you failed to disclose that you had been previously treated for bi-polar disorder.").

Court did not make an actual ruling on that issue because it grounded its denial on Willett's failure to carry her burden for a protective order, it cited case law holding that "[d]ocuments which might reasonably provide—or lead to the discovery of—admissible evidence regarding the declarants' knowledge, credibility and biases would clearly be relevant." *Vitalis v. Sun Constructors, Inc.*, No. 05-cv-0101, 2020 WL 4912298, at *13 (D.V.I. Aug. 20, 2020); and the "broad and liberal discovery philosophy espoused by Rule 26(b)(1)" supported a motion to compel certain evidence that bore upon credibility inquiries, and such evidence was "relevant and discoverable." *Johnson v. Wetzel*, No. 16-cv-863, 2016 WL 4158800, at *6 (M.D. Pa. Aug. 5, 2016).

The Court now holds that Willett's initial application to the VIBME is relevant and discoverable. *See* 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure,* § 2015 (3d ed. 2010) ("Discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition. Inquiry is routinely allowed about . . . matters that go to [a party's] credibility. Information showing that a person having knowledge of discoverable facts may not be worthy of belief is always relevant to the subject matter of the action."). Because this information is not covered by privilege under 27 V.I.C. § 13, as the application was provided by Willett herself and is not a communication relating to any investigation, the Court holds that Willett's initial application for licensure to the VIBME may be produced under the subpoena. However, although Dahlberg has also sought "documents filed in support of her license and application therefore" in his subpoena, Dkt. No. 72-1, he makes no argument concerning what these

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 16

documents may be and why they would be relevant to Willett's credibility—particularly since his focus has been solely on the application itself. The Court will therefore exclude those documents from production by the VIBME.

### B. The Remaining Documents in the VIBME File

Dahlberg has not only subpoenaed Willett's initial VIBME application but her entire VIBME file. He mentions, only in passing, that he would not object to any of the complaints against Willett possibly contained in the VIBME file to be subject to the Protective Order issued in this case, with redaction to remove identifying information of any complainant. Dkt. No. 85 at 3. But he does not explain, at all, why or how information contained in those possible reports or complaints in the VIBME file may be relevant to this case. As the Court observed in its July 2, 2025 Order, "the VIBME is not a party to this litigation, and Willett's licensing as a medical doctor is not an issue in any of the causes of action in the Complaint or Counterclaims."[2] Dkt. No. 73 at 17. Given that salient fact, as well as the lack of argument by Dahlberg regarding how the contents of Willett's VIBME file (other than her initial application) have any apparent connection or relevancy to this litigation, the Court holds that Dahlberg has not shown that his request for the VIBME file (other than the initial application) is relevant and falls within the scope of Rule 26. As a result, Willett's motion to quash will be

---

[2] Willett alleged claims for assault, trespass, intentional infliction of emotional distress, false imprisonment, trespass to chattels, conversion, and battery. Dkt. No. 7. Dahlberg alleged counterclaims for abuse of process, conversion, and intentional infliction of emotional distress. Dkt. No. 9.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 17

granted in part on that basis and it is not necessary to shift the burden to the party opposing the subpoena to establish a basis to quash. *Paramo*, 2018 WL 4538422, at *2.

In sum, the Court denies in part the motion to quash, to the extent Willett seeks to quash the subpoena directing production of her initial application to the VIBME, and grants in part the motion to quash, to the extent that Willett seeks to quash the subpoena directing production of remaining the contents in her VIBME file, including all documents filed in support of her application for licensure. *See Ramos*, 2023 WL 2327208, at *2 ("Under Rule 45, 'courts have significant discretion' to quash or modify a subpoena where the discovery sought is irrelevant[.]"); *Moffitt v. Tunkhannock Area Sch. Dist.,* No. 13-cv-1519, 2016 WL 4271773, at *3 (M.D. Pa. Aug. 15, 2016) ("The Third Circuit has upheld district court orders quashing subpoenas due to the responding party's failure to demonstrate the relevance of the desired information.") (citing Third Circuit cases).[3]

---

[3] Even if, as Dahlberg argues, Willett had no standing to quash the subpoena on VIBME, a third party, she would have had standing to move under Rule 26(c) for a protective order limiting or disallowing the third party discovery on the ground that it sought information beyond the scope of Rule 26(b)(1)—*i.e.*, that it was irrelevant. *See Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*, No. 13-1140, 2014 WL 7073466, at * 4-5 (D.N.J. Dec. 15, 2014) (citing *EEOC v. United Galaxy*, 2011 WL 4072039, at *2 (D.N.J. Sept. 13, 2011)); *see also Ramos*, 2023 WL 2327208 at *3 n.3 ("[R]egardless of Plaintiffs' standing under Rule 45, the court may, in its discretion, examine the discoverability of the subpoenaed information with respect to its relevance. . . and any concerns regarding privacy or confidentiality, under the Rule 26 rubric."); *Staff4Jobs, LLC v. List Logistics, LLC,* No. 18-cv-13399, 2020 WL 13580942, at *3 (D.N.J. Oct. 19, 2020) (as a matter of the court's "inherent authority to engage in case management," it sua sponte considered a motion to quash "as one for a protective order pursuant to Rule 26, given the relevance concerns it raises."). Here, the Court could have—in the alternative—granted Willett a protective order against the production of the VIBME file (other than her initial application for licensure) on the ground that it was irrelevant for the same reasons as articulated above, as well as oppressive because, given the private, if not

## CONCLUSION

Accordingly, for the reasons set forth above, it is hereby **ORDERED**:

1. Plaintiff's Motion to Enforce Discovery Order and Quash Subpoena Duces Tecum to the Virgin Islands Board of Medical Examiners, Dkt. No. 80, is **GRANTED IN PART AND DENIED IN PART**.

2. The Motion is **GRANTED** to the extent that the Court will quash Defendant Dahlberg's Subpoena, Dkt. No. 72-1, seeking production of "[a]ll records, . . . reports, filings, disciplinary reports, of files regarding KATHERINE WILLETT (formerly Katherine Dahlberg) regarding her licensure as a medical doctor . . . including all documents filed in support of her license and application therefore."

3. The Motion is **DENIED** to the extent that the Court declines to quash that part of Defendant Dahlberg's Subpoena, Dkt. No. 72-1, that seeks production of Willett's initial application for licensure to the VIBME.

ENTER:

Dated: August 7, 2025

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE

---

extremely sensitive and confidential nature of the information in the file, and no explanation of Dahlberg's need for it, it appears to be sought for an improper purpose—to annoy and oppress, which are grounds for granting a protective order under Rule 26(c).