| DISTRICT COURT OF THE VIRGIN ISLANDS |
| :---: |
| DIVISION OF ST. CROIX |

KATHERINE WILLETT,

      Plaintiff/Counter-Defendant,

      v.

CHRISTOPHER DAHLBERG,

      Defendant/Counter-Plaintiff.

1:24-cv-00024-MEM-EAH

TO:      Lee J. Rohn, Esq.
         David J. Cattie, Esq.

## ORDER

**THIS MATTER** comes before the Court on the Motion to Compel, filed by Defendant/Counter-Plaintiff Christopher Dahlberg on November 24, 2025. Dkt. No. 122. In the Motion, Dahlberg seeks an Order pursuant to Fed. R. Civ. P. 37 and LRCi 37.1 compelling Plaintiff/Counter-Defendant Katherine Willett to provide responses to certain discovery demands served upon her in this case. Willett filed an Opposition on January 9, 2026, Dkt. No. 136, and Dahlberg filed a Reply on January 13, 2026. Dkt. No. 139. For the reasons that follow, the Court will grant in part and deny in part the Motion to Compel.

## BACKGROUND

### I. Amended Complaint, Answer & Counterclaim, Further Litigation

Although no Scheduling Order has been entered in this case, litigation has been proceeding vigorously since the Complaint filed by Willett in the Superior Court of the Virgin Islands was removed to this Court in October 2024. The Court will provide some procedural background to place the current Motion to Compel in context.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 2

After the Complaint was removed, Willett filed an Amended Complaint. Dkt. No. 7. She alleged that, on numerous occasions, Dahlberg "pushed, hit, threatened and held Plaintiff down to the ground" which caused a spinal injury requiring multiple surgeries. *Id*. ¶ 5. As a result of his actions, Willett incurred damages including medical expenses, permanent injuries, post-traumatic stress disorder, chronic pain, loss of income, and economic losses. *Id*. ¶ 11. She alleged claims for assault (Count I); trespass (Count II); intentional infliction of emotional distress (Count III); false imprisonment (Count IV); trespass to chattels (Count V); conversion (Count VI); and battery (Count VII). *Id*. at 4-5.

In November 2024, Dahlberg filed an answer and counterclaims. Dkt. No. 9. He alleged that the parties had been married from June 2009 until the Superior Court dissolved their marriage in February 2024. *Id.* ¶ 6. Willett—a licensed medical provider—has experienced mental and psychological issues for years, including bipolar disorder, and admitted to Dahlberg, inter alia, that she lied on her Virgin Islands medical license application. *Id.* ¶¶ 8-21. Further, Willett stole $19,000 from his bank account and refused to return the funds. *Id*. ¶¶ 40-41. Dahlberg alleged counterclaims for abuse of process (Count I); conversion (Count II); and intentional infliction of emotional distress (Count III). *Id*. at 8-10.

One of the Counterclaim allegations provided:

> 40.    In 2024, Katherine Willett stole $19,000 from Counter-Plaintiff's bank account, without any authority to do so, and she has refused to return those funds.

Dkt. No. 9 ¶ 40. Willett answered the Counterclaims. Dkt. No. 17. In response to Paragraph 40, she stated:

> Deny. In 2024, while the Parties were still married, Plaintiff/Counter Defendant with Defendant/Counter Plaintiff's agreement and permission paid the two children's Montessori tuition out of Defendant/Counter Plaintiff's account.

*Id.* ¶ 40.

The parties extensively litigated the terms of a protective order. During that litigation, Willett's counsel, Lee J. Rohn, Esq., filed an exhibit in April 2025 consisting of an October 2022 email from Dahlberg to Lydia Moolenaar, Esq., Dahlberg's attorney in the Superior Court divorce/domestic violence proceedings, that revealed attorney-client communications. Dkt. No. 37. On April 16, 2025, Dahlberg's attorney in this Court, David J. Cattie, Esq., filed a Motion for Sanctions against Willett and Attorney Rohn, charging that Willett impermissibly accessed Dahlberg's email account and stole his privileged communications. Dkt. No. 38. The motion asserted that the crime fraud exception to attorney-client privilege applied and accused both Willett and Attorney Rohn of violating the Computer Fraud & Abuse Act, the Stored Communication Act, and Virgin Islands criminal statutes. Dkt. No. 39.

The Court held an evidentiary hearing on the motion on July 29, 2025. During Willett's testimony, Attorney Cattie asked questions pertaining to Defendant's Exhibit 13 (admitted into evidence)—Dahlberg's Truist Bank statement that indicated, inter alia, that "Katie Dahlberg" had verified the account via PayPal on 12/27/23, and an $18,080 withdrawal for "St. Croix Montess" was made on 1/12/24. To all of the questions concerning this exhibit and withdrawal of funds, including whether Willett accessed the Truist account from Dahlberg's cellphone that she purportedly found at the house after Dahlberg moved out, she responded

that, upon the advice of her attorney, she was "pleading the Fifth [Amendment]." Dkt. No. 137 at 11. In his testimony, Dahlberg asserted that he had set up the Truist bank account shortly after he and Willett separated, and he never gave her authorization to access it. She appeared to have withdrawn $18,080 for a school payment. *Id.* at 13.

The Court issued a Report & Recommendation on January 9, 2026 that recommended granting in part Dahlberg's Motion for Sanctions, to the extent that sanctions in the form of attorney's fees and costs be assessed on Willett related to the litigation expenses surrounding the sanctions motion. Dkt. No. 137 at 40-41. The Court recommended denying the motion in part to the extent that Dahlberg had asked that the case be dismissed. *Id.* The R&R is currently pending.

## II.    Motion to Compel

In August 2025, Attorney Cattie sent a letter to Attorney Rohn, pursuant to LRCi 37.1, outlining deficiencies in certain requests for admission and requests for production of documents submitted by Dahlberg, Dkt. No. 122-1, and arranged a meet and confer with Attorney Rohn to resolve the disputes. Dkt. No. 122 at 1. The meet and confer took place on September 2, 2025 by telephone; the parties were unable to resolve all of their outstanding issues. *Id.* As a result, Attorney Cattie sought an informal conference with the Court, pursuant to LRCi 37.1(c). At the October 30, 2025 conference, the Court directed Willett to supplement her responses to Dahlberg's discovery demands by November 14, 2025 and also directed counsel to brief the issues related to Willett invoking her Fifth Amendment right against self-incrimination. The Court directed Attorney Cattie that if Willett's supplemental responses to

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 5

the other requests for production of documents were insufficient, he should brief that issue

as well. *Id.* at 2. On November 17, 2025, Willett supplemented her responses. Dkt. No. 122-3.

While she executed requested medical authorizations, she did not supplement her other

responses and refused to supply requested medical or business records. Dkt. No. 122.

Consequently, Attorney Cattie filed the Motion to Compel on November 24, 2025. *Id.*

### A. Fifth Amendment Privilege

In the Motion to Compel, Dahlberg challenges two of Willett's responses to his

requests for admissions in which Willett invoked the Fifth Amendment privilege:

> 11.   Admit that on January 12, 2024 you transferred $18,080.00 from
> Christopher Dahlberg's Truist One bank account through a web-based
> application.
> **Response**: Plaintiff declines to respond pursuant to her 5 Amendment Rights
> on the advice of counsel.
>
> 12.   Admit that you have no documentation (including text messages, direct
> messages, e-mails, letters, correspondences) in which Christopher
> Dahlberg authorized you to access his Truist One bank account to
> withdraw the $18,080.00 taken on January 12, 2024.
> **Response**: See response to Request for Admissions No. 11.

Dkt. No. 122 at 3, citing Dkt. No. 122-5. Dahlberg argues that Willett waived her Fifth

Amendment objections by (1) filing her responses beyond the 30-day deadline set out by

Fed. R. Civ. P. 36(a)(3), and (2) admitting in her Answer to the Counterclaims that she took

the money from the account with Dahlberg's permission, thereby disclosing the

incriminating evidence. *Id.* at 4-8.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 6

Second, Dahlberg argues that Willett failed to establish that invoking the Fifth Amendment to refuse production of documents comported with the law. *Id.* at 10-14. The demand and response at issue are as follows:

> 1.    Any and all documents in your possession or otherwise accessible to you related, in any way, to the transactions shown on the Truist Statement (bates numbered at CD-000122-000127) including, but not limited to, any PayPal account statements or transaction records for 2023 and 2024, for any account that was (or is) in your name or any PayPal account over which you had access at any time in 2023 and/or 2024, including any accounts which are now closed. The word "transactions" in this request refers to the January 12, 2024 internet payment for $18,080.00 [shown] and the December 27, 2023 "deposits, credits and interest" transactions [not shown here].

> **Response**: Plaintiff declines to respond pursuant to her 5th Amendment Rights on the advice of counsel.

Dkt. No. 122 at 10, citing Dkt. No. 122-6. Dahlberg contends that the Fifth Amendment does not apply to the production of documents created by others (such as PayPal), and they were not "testimonial." Dkt. No. 122 at 10-11 (quoting *G & V Farms, LLC v. Hartford Fire Ins. Co.*, No. 09-cv-1324, 2011 WL 4565632, at *5 (M.D. Pa. Sept. 29, 2011)). In addition, Willett could not rely on the act of production rule to avoid production because that rule does not concern whether the *content* of the documents is incriminatory but whether the testimony inherent in the act of *producing* the documents is incriminatory. *Id.* The party opposing production must articulate a basis for invoking the rule, and Willett did not do so. *Id.* at 12-13. And even if possession and production of these records were incriminating, the Fifth Amendment protection does not apply if the existence and authenticity of the records was already known to the requesting party, making the act of producing the document not testimonial pursuant

to the "foregone conclusion exception." *Id.* at 13. Willett admitted to withdrawing the funds

from the account and the records showed the withdrawal was conducted through Willett's

PayPal account, establishing that the PayPal records exist. *Id*.

### B. Requests for Production

Dahlberg asked Willett to produce medical records and her application to the V.I.

Board of Medical Examiners ("VIBME"):

> 14.    All applications (including any amended or corrected version thereof), forms, letters, correspondence, or other communications between you and the Virgin Islands Board of Medical Examiners exchanged at any time.
>
> **Response**: Objection irrelevant.
>
> **Supplemental Response**: Plaintiff states that her search to date has not uncovered any such documents. Plaintiff will produce any responsive documents should any be discovered.

> 15.    Any medical reports, notes, tests, prognoses, prescriptions, bills, invoices, etc. related, in any way, to any treatment you have ever received regarding any mental illness including, but not limited to, depression, bi-polar disorder, alcohol abuse, narcotics abuse, prescription drug abuse.
>
> **Response**: Objection, overly broad as it is not limited to time and scope and as such seeks irrelevant information.
>
> **Supplemental Response**: Plaintiff states she has no medical records or related documents in her possession responsive to this request However, please see the executed Medical Records and Information (Mental Health Care Providers) and Medical Records and Information (Health Care Providers) authorizations produced and attached hereto as Bates Nos. KW000302-KW000304.

> 16.    All records, reports, notes, tests, prognoses, prescriptions, bills, invoices, etc. from your treatment at Three Rivers Behavioral Health.
>
> **Response**: Objection irrelevant as to time and scope.
>
> **Supplemental Response**: Plaintiff states she has no records or related documents in her possession responsive to this request. However, please see the executed Medical Records and Information (Mental Health Care Providers)

and Medical Records and Information (Health Care Providers) authorizations
produced and attached hereto as Bates Nos. KW000302-KW000304.

*Id*. at 14-15 (quoting Dkt. No. 122-3). Dahlberg argues that these responses are insufficient:

Willett was required to obtain these documents herself, as she has the legal right to obtain

the documents on demand. *Id*. at 15.

### III.    Willett's Opposition

In her Opposition, Willett acknowledges that Dahlberg issued his Requests for

Admission on June 25, 2025, Dkt. No. 68, which were due on July 25, 2025. Dkt. No. 136 at 3.

On July 29, 2025, the Court held the evidentiary hearing on the Motion for Sanctions, where

Willett asserted her Fifth Amendment privilege against self-incrimination fourteen times

related to questions concerning Willett accessing Dahlberg's bank account and "stealing"

money from him. *Id*. She points out that Dahlberg did not object to these responses but relied

on them to obtain an adverse inference against her. *Id.* On July 30, 2025, Willett responded

to Requests for Admission 11 and 12 (above), consistent with her testimony at the hearing

by invoking her Fifth Amendment privilege. *Id.* at 4. On August 1, 2025, Dahlberg received

Willett's response to the Second Request for Production (No. 1, above) where she invoked

her Fifth Amendment privilege consistent with her testimony at the hearing. *Id.*

Willett contends that she properly and timely asserted her Fifth Amendment privilege

and it has not been waived. *Id*. at 4-11. She asserted the privilege when her fear of

incrimination became substantial and real—at the evidentiary hearing—which partially

focused on her alleged illegal access to Dahlberg's bank account to steal funds from him. *Id.*

at 7. If she had attempted to assert the privilege in response to the Counterclaim, it would

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 9

have been premature because she did not have a genuine fear of criminal prosecution at that time. *Id.* Her answer to the Counterclaim stated that she had Dahlberg's permission to access the funds, but after the briefing on the Motion for Sanctions, Dahlberg was accusing her of a crime. *Id.* She realized that if Dahlberg continued to deny that she had permission to pay for their children's schooling (that Willett believed she had), she could face criminal prosecution or be compelled to provide evidence that could be used to prosecute her criminally. She therefore timely invoked her Fifth Amendment privilege when her fear became real—a situation created by Dahlberg. *Id.* at 7-8.

Further, responding to requests for admissions five days late did not waive her privilege. *Id.* at 9. It was Dahlberg who waived any objection by not objecting to Willett's assertion at the hearing, that took place four days after the requests for admission were due. *Id.* at 10. Dahlberg also waived any argument that Willett waived the privilege by failing to identify any prejudice to him from Willett's invocation of the privilege. *Id.* Even if he did not waive his objection, Willett's two late admissions do not waive the privilege because failure to comply with technical parameters of a rule of civil procedure for five days should not render a constitutionally protected right waived in its entirety, and Dahlberg failed to cite any case supporting his position. *Id.* at 10-11.

Willett then asks the Court to allow her to amend her Answer to Dahlberg's Counterclaim if the Court finds that it "distorts the truth of these proceedings such that it affects Willett's ability to assert her Fifth Amendment privilege." *Id.* at 11-12. While a party is bound by its pleadings, it does not follow that a party may not amend them. Even if her

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 10

response to the Counterclaim is considered an admission, nothing prohibits amendment, and

Willett has no intention of asserting permission as a defense moving forward. *Id.* at 12. The

Court should also permit her leave to amend her admissions. She "moves the Court" to permit

her to amend the admissions to assert her privilege as consistent with her testimony at the

hearing, which would promote presentation of the merits of the action and not prejudice

either party. *Id.* at 13.

Next Willett argues that the privilege precludes her from producing any PayPal

records she may possess because they may "implicitly communicate inculpatory statements

of fact that the Fifth Amendment protects." *Id.* Dahlberg speculates that Willett used a PayPal

account to transfer money from his bank account to St. Croix Montessori school, but there is

no evidence Willett had such an account and no evidence linking her to the PayPal deposits.

*Id.* at 15. Assuming that Willett produced PayPal records, she would be potentially admitting:

(1) she had a PayPal account; (2) the PayPal account was used to deposit funds into

Dahlberg's account; (3) the PayPal account was used to transfer funds to the school; and (4)

the authenticity of those documents. *Id.* Requiring Willett to produce her PayPal account

"provides too many links in the chain of evidence to not qualify as testimonial" and requires

her to incriminate herself. *Id.* Moreover, Dahlberg cannot independently authenticate

Willett's PayPal records. *Id.* at 16.

Finally, the Court should deny Dahlberg's motion to compel production of Willett's

VIBME File, medical records, and Three Rivers Behavioral Health ("TRBH") records.

Dahlberg fails to meet his initial burden to demonstrate the records are relevant; his request

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 11

for the VIBME files is duplicative; and Willett has already executed authorizations for him to obtain her medical and TRBH records. *Id.* at 16-17. Regarding the VIBME file, the Court ruled that Dahlberg was entitled to Willett's initial VIBME application but quashed the remaining records as irrelevant; the records Dahlberg now seeks were encompassed within that subpoena duces tecum to the VIBME. *Id.* at 17-18. The Court should therefore deny the motion to compel the VIBME file. *Id.* at 18. Willett does possess the requested documents. *Id.*

As to Willett's medical and TRBH records, she executed authorizations on November 17, 2025 as agreed at the October 30, 2025 informal conference but Dahlberg claims she is obligated to obtain the documents as they are under her control. *Id.* at 18 & n.16. But they are also under his control since he has the authority to obtain them, and the motion to compel them should be denied. *Id.* at 19.

## IV.    Dahlberg's Reply

Dahlberg points out that when Willett responded to Counterclaim 40, she made an affirmative admission that she took the money but with Dahlberg's express permission. Dkt. No. 139 at 2. She could have invoked the Fifth Amendment at that time (as the allegation was that she "stole" money from his account) or denied it, but she did neither. This is not a simple case of untimeliness but an affirmative statement of innocence—not a mere failure of timely invoking the privilege. *Id.* She now seeks to amend her Counterclaim, but an Opposition is the wrong mechanism to seek such relief. Such gamesmanship (permitting a party to amend an answer because the admission blew up in her face) is the antithesis of a search for truth in litigation. *Id.* Willett wants to change her position because she determined it is no longer

advantageous. *Id*. at 2-3 (citing Dkt. No. 136 at 12 that she no longer intends to assert "permission" as a defense which, in Dahlberg's view, is an admission she lied in her answer to the Counterclaim). Invoking the privilege in response to questions at the hearing did not excuse the fact that Willett failed to invoke it when responding to the Counterclaim or to the requests for admission and constitutes waiver. *Id.* at 3.

Willett's statement that the hearing gave her a real and substantial fear of criminal prosecution does not carry her burden as she has not identified any law enforcement investigation into her conduct. *Id.* at 3-4. Dahlberg does not speculate that Willett used her PayPal account to transfer money from his bank account to the school because Willett admitted to that fact in her answer to the Counterclaim, and the records show an account verification conduct was done through PayPal to Dalhberg's bank account shortly before the transfer—the method by which PayPal confirms access to a bank account. *Id*. at 4-6, citing Dkt. No. 139-1. Dahlberg adds that Willett admitted she had a PayPal account in response to Interrogatory 13, that asked her to identify her email address associated with any PayPal account she has used since 2020. *Id.* at 6 (citing Dkt. No. 139-2). Having admitted she had a PayPal account, and where the direct and circumstantial evidence showed her account was used to complete the transfer, the foregone conclusion rule requires her to produce the records. The fact there may be other Katie Dahlberg accounts does not overcome the evidence that her account was used to complete the theft. *Id.* As to the VIBME records, the Court has ruled on their relevance. Whether Willett actually physically possesses them is irrelevant; her right to obtain them on demand controls. *Id.* at 7.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 13

## DISCUSSION

### I.    Applicable Standards

#### A.  Discovery Under Rule 26

Federal Rule of Civil Procedure 26(b)(1), concerning discovery scope and limits, provides, inter alia:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Matters of discovery are committed to the broad discretion of the court, *United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017). The Third Circuit has described the Rule's relevancy standard as "undemanding," noting that courts "employ a liberal and broad discovery-type standard which requires only the probability that the desired information is relevant." *Crozer Chester Med. Ctr. v. Nat'l Lab. Rels. Bd.,* No. 22-2608, 2023 WL 3018280, at *2 (3d Cir. Apr. 20, 2023).

#### B.  Requests for Admissions; Requests for Production

Federal Rule of Civil Procedure 36 governs requests for admissions. Rule 36(a)(3) provides: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Rule

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 14

36(b) concerns the effect of an admission and withdrawing or amending it. "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended[.]" Fed. R. Civ. P. 36(b).

Federal Rule of Civil Procedure Rule 34 governs the production of documents. The rule provides, in pertinent part:

> **(B)** *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. . . .
> **(C)** *Objections.* An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest[.]

Fed. R. Civ. P. 34(b)(2)(B), and (C). As with all discovery, a party's requests may seek "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The decision to find a waiver of objections under Rule 34 and compel production of documents are both within the sound discretion of the court. *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 238 (D.N.J. 2022) (citing cases).

### C. Motion to Compel

Rule 37 of the Federal Rules of Civil Procedure authorizes a party to move to compel another party to comply with discovery obligations. The Rule provides, inter alia, that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Under Rule 37, a court may issue an order compelling discovery where a party fails to answer an interrogatory under Rule 33 or fails to produce documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). Requests for

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 15

admission are also subject to motions to compel. *BITCO Gen. Ins. Corp. v. Port Vue Plumbing*, *Inc.,* No. 23-cv-1088, 2024 WL 5118431, at *1 (W.D. Pa. Dec. 16, 2024). A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. *Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). "Once that initial burden is met, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Prime Energy & Chem., LLC v. Tucker Arensber P.C.*, No. 2:18-CV-0345, 2022 WL 1642394, at *4 (W.D. Pa. May 24, 2022) (citation modified).

### D.    Fifth Amendment Privilege

The Fifth Amendment protects against self-incrimination through its provision that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. It can be invoked "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory[.]" *Kastigar v. United States,* 406 U.S. 441, 444 (1972). The right protects against disclosures "which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Id.* at 444–45; *see also United States v. Yurasovich*, 580 F.2d 1212, 1215 (3d Cir. 1978) (privilege extends "to answers that would in themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant.")

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 16

(citation modified). If a party voluntarily reveals incriminating facts, the party cannot invoke privilege to avoid disclosure of the details. *Rogers v. United States*, 340 U.S. 367, 373 (1951).

The Fifth Amendment does not bar the production of all incriminating evidence, "but applies only when the accused is compelled to make a Testimonial Communication that is incriminating." *United States v. Apple MacPro Computer*, 851 F.3d 238, 247 (3d Cir. 2017). "To be testimonial, a communication must either explicitly or implicitly relate a factual assertion or disclose information." *Id.* (citation modified). Invocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth. *S.E.C. v. Graystone Nash, Inc.,* 25 F.3d 187, 190 (3d Cir. 1994). Further, in determining whether to allow defendant to assert this privilege, the court is required to "balance the defendant's rights against the interests of the plaintiff in full discovery and speedy disposition of the civil action." *In re Penn Central Secs. Litig.,* 347 F. Supp. 1347, 1348 (E.D. Pa.1972).

The privilege is not self-executing, *Roberts v. United States*, 445 U.S. 552, 559 (1980) and can be waived by failing to invoke it in a timely manner and by disclosing incriminating evidence. *Rogers,* 340 U.S. at 373; *see also United States v. Frierson*, 945 F.2d 650, 660 (3d Cir. 1991) (privilege is not "self-executing and thus must be claimed when self-incrimination is threatened."). The party who claims the privilege has the burden of establishing the existence of the privilege. *Brock v. Gerace*, 110 F.R.D. 58, 63 (D.N.J. 1986). In cases where the waiver of the privilege is disputed, the party claiming the privilege also has the burden of establishing its non-waiver. *Id.* at 63.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 17

## II. Application

### A. Requests for Admissions

Willett invoked the Fifth Amendment privilege in response to two requests for admission and one request for production, which Dahlberg has challenged. As Willett acknowledges, the requests for admission, served on June 25, 2025, were due 30 days later, on July 25, 2025. She served her responses on July 30, 2025, five days after the deadline and a day after the July 29, 2025 evidentiary hearing. Dkt. No. 136 at 3, 4, 10. Rule 36 explicitly provides that the matter is "admitted" unless, within that 30-day time frame, the responding party serves a written answer or objection. Fed. R. Civ. P. 36(a)(3). Thus, by operation of the Rule, Dahlberg's requests for admissions 11 and 12 are admitted. Willett argues that this late response does not waive her Fifth Amendment privilege because Dahlberg waived any objection to her asserting the privilege by not objecting at the June 29, 2025 hearing and by failing to identify any prejudice he experienced because of the assertion, and failure to comply with the rule "should not" render a constitutionally-protected right waived in its entirety. *Id.* at 9-10.

Willett has cited no Rule or case law in support of her position that because Dahlberg did not object to her invocation of her Fifth Amendment rights at the hearing he waived any right to object to her invocation of that right in her late responses to the requests for admissions, and the Court rejects that argument. And contrary to her assertion, Dahlberg identified prejudice from Willett's assertion. Dkt. No. 122 at 8 ("It would be extremely prejudicial to Dahlberg to permit Willett to present such a defense [permission to access

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 18

funds] in this case while simultaneously preventing Dahlberg from challenging her position."); *see id.* at 10 ("Willett has 'cherry picked' her invocation [of the Fifth Amendment] which is prejudicing Dahlberg's ability to substantiate his claims.").

As to Willett's argument that failure to comply with the deadlines in Rule 36 "should not" render a constitutionally-protected right waived in its entirety, her late response to the admissions does not implicate waiver: it simply provides that the responses are "conclusively established." Fed. R. Civ. P. 36(b). The *only* way such admissions can be withdrawn or amended is by motion. *Id*. No motion has been filed in the seven months since Willett responded to the admissions. Although her Opposition asked the Court to grant her leave to amend the admissions *if* the Court found that they were admitted, Dkt. No. 136 at 12-13, that contingent request did not come by way of a motion. An opposition to a motion to compel is not the vehicle to seek such relief pursuant to the text of the Rule. Thus, under Rule 36, admissions 11 and 12 are established. *See In re Friedman*, 543 B.R. 833, 834-35 (Bankr. N.D. Ill. 2015) ("Rule 36 requires a respondent to either answer or object within 30 days and if the respondent does neither then the matter is deemed admitted. Fed. R. Civ. P. 36(a)(3). If a matter is admitted, then the only way for a party to assert an objection is by withdrawing the admission by motion to the court. Moreover, this rule complies with the Supreme Court's directive that the Fifth Amendment privilege against self-incrimination may not be relied upon unless it is invoked in a timely fashion. As such, the Debtor here should have invoked his privilege as an answer to the Plaintiff's Complaint and Amended Complaint, as well as the discovery requests. Having failed to timely assert his privilege, the

privilege is considered waived."); *In re Le-Nature's, Inc.*, 380 B.R. 747, 750-51 (Bankr. W.D. Pa. 2008) (requests for admissions not responded to in 30 days admitted, even where objection could have been based on Fifth Amendment right).

Willett asserts that operation of the Rule should not equate to her waiving her Fifth Amendment rights because those rights are so important. But even if the Court were to conclude that requests for admission 11 and 12 were not admitted by operation of Rule 36, it would still hold that Willett waived her Fifth Amendment rights by not invoking that protection in a timely manner. *U.S. v. One Million Three Hundred Twenty-Two Thousand Two Hundred Forty-Two Dollars & Fifty-Eight Cents*, 938 F.2d 433, 439 (3d Cir. 1991) (explaining that a party wishing to assert his Fifth Amendment privilege in response to document requests is "required to assert timely objections in response to individual discovery requests."); *Roberts,* 445 U.S. at 559. Dahlberg argues that Willett waived that protection over a year ago because she did not assert it in response to Counterclaim 40 that accused her of "stealing" $19,000 from his bank account without any authority to do so. Dkt. No. 9 ¶ 40. But instead of raising her Fifth Amendment rights in response to an allegation that accused her of stealing—a word that certainly invokes a crime—Willett not only admitted taking the money but added that she was justified in doing so based on permission given by Dahlberg. Dkt. No. 17 ¶ 40. In the year since she filed that Answer to the Counterclaim, she has not moved to amend it, and she is bound by that pleading. *Parilla v. IAP Worldwide Servs., VI, Inc.,* 368 F.3d 269, 275 (3d Cir. 2000). But, similar to her request to amend her admissions, Dkt. No. 136 at 12-13, she also asks the Court—in her Opposition—to allow her to amend her

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 20

Answer to the Counterclaim, *id*. at 11-12. As counsel knows, an Opposition is not the proper vehicle to seek leave to amend, and the Court rejects such an improper request.

Willett argues that her invocation of the privilege was not untimely because she asserted it "when her fear if incrimination became substantial and real"—at the July 2025 evidentiary hearing—which focused in part on her alleged illegal access to Dahlberg's bank account causing her to invoke the Fifth Amendment fourteen times. Dkt. No. 136 at 7. According to Willett, if she had attempted to assert the privilege in response to the Counterclaim, it would have been premature because she did not have a genuine fear of criminal prosecution at that time. *Id.* The Court rejects this argument for a number of reasons. First, as indicated above, the Counterclaim accused her of a crime—stealing—and thus she should have appreciated that if she answered, she might incriminate herself. But her position was that she had *permission* to take money. Given that was her position, she had no genuine fear of criminal prosecution at that time.

On April 16, 2025, Dahlberg filed his Motion for Sanctions, Dkt. No. 38, explicitly accusing Willett of violating certain criminal statutes in stealing money from his bank account. *See* Dkt. No. 39. Even if the Court accepted Willett's assertion that when she answered the Counterclaim she did not have a fear of criminal prosecution, it is beyond cavil that the filing of the Motion for Sanctions should have clearly put a fear of criminal prosecution in her sights. That was certainly the time to re-evaluate her Answer to the Counterclaim and invoke her Fifth Amendment privilege. However, it was not until July 29, 2025—three and one-half months later at the evidentiary hearing—that Willett asserts that

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 21

she *first* had a fear of criminal prosecution and therefore invoked her Fifth Amendment privilege to questions that focused on "stealing" those funds. She does not explain why the Motion for Sanctions, explicitly raising possible criminal violations, did not induce a fear of prosecution when, in the Court's view, it clearly should have. Willett delayed in invoking the privilege and did not carry her burden of showing that she did not waive it. Thus, even if Requests for Admission 11 and 12 were not admitted by operation of Rule 36, Willett waived her Fifth Amendment privilege that she asserted in response to them, and the Court rules that Requests for Admission 11 and 12 are admitted.[1]

### B.  Production of Documents

#### 1.  Fifth Amendment Privilege

Dahlberg seeks to compel Willett's response to Request for Production 1 that seeks "any and all documents" relating to the December 2023 Truist Bank withdrawals, including her PayPal account statements, to which Willett declined to respond citing her Fifth Amendment rights. Dkt. No. 122 at 10.

In *Freedom Medical, Inc. v. Gillespie*, No. 06-cv-3195, 2008 WL 3791339 (E.D. Pa. Dec. 21, 2008), the district court discussed two U.S. Supreme Court cases that opined on the Fifth Amendment privilege in the context of seeking production of documents:

---

[1] The Court also concludes that Willett waived the Fifth Amendment privilege by disclosing incriminating evidence. *Rogers*, 340 U.S. at 373. In her Answer to the Counterclaim—still on the docket—Willett admitted taking the money to pay the children's tuition with Dahlberg's permission. Having voluntarily revealed "incriminating facts, that party cannot invoke the privilege to avoid disclosure of the details." *Thorne v. Loews Phila. Hotel, Inc.*, No. 15-cv-3837, 2016 WL 4011332, at *3 (E.D. Pa. July 27, 2016). At this point, Willett cannot "cherry pick" what details she wishes to disclose concerning this transaction. *Id.*

Mr. Hall has an individual Fifth Amendment right against self-incrimination. That right, however, is not implicated by the mere fact that some of the documents that the plaintiff seeks may contain incriminating information. *United States v. Hubbell,* 530 U.S. 27, 35-36 (2000). The privilege against self-incrimination, however, may be implicated if the act of producing the documents communicates information about the existence, custody, or authenticity of the documents. *Id.* Determining whether the production of documents is sufficiently communicative and testimonial to implicate the self-incrimination privilege depends on the facts and circumstances of each particular case. *Fisher v. United States,* 425 U.S. 391, 410 (1976).

In *Fisher,* the U.S. Supreme Court held that a request for an accountant's work papers did not implicate the Fifth Amendment rights of a taxpayer because the government was not relying on the taxpayer's act of production to prove the existence or location of the documents, which the Court described as a "foregone conclusion." *Id.* at 411. In *Hubbell,* in contrast, the Court held the Fifth Amendment rights of a defendant were violated when he was compelled to respond to broad government document requests used to "identify potential sources of information and to produce those sources." *Id.* at 41.

*Id.* at *2. Willett argues that the privilege precludes her from producing her PayPal records because they may "implicitly communicate inculpatory statements of fact that the Fifth Amendment protects" as she would be potentially admitting that: she had a PayPal account, that account was used to deposit funds into Dahlberg's account and to transfer funds to the school, and the documents were authentic, Dkt. No. 136 at 13, and producing the documents "provides too many links in the chain of evidence to not qualify as testimonial," *id.* at 15, Dahlberg contends that the PayPal records are not testimonial, citing *Knopf v. Esposito*, 517 F. Supp. 3d 187, 190-91 (S.D.N.Y. 2021) and, even if they were, the "foregone conclusion" exception applies and requires Willett to comply with the demand for production.

Although Willett asserts there is no evidence she has a PayPal account, Dkt. No. 136 at 15, that statement is undermined by Exhibit 13, admitted during the evidentiary hearing,

Dkt. No. 113 at 3, showing account information for Dahlberg's Truist Bank account indicating two "AcctVerify Paypal [ ] Katie Dahlberg" entries on 12/27/23 under "Deposits, credits and interest" in the amount of 0.04 and 0.11. *See* Dkt. No. 122 at 10. This exhibit shows that Willett had a PayPal account and linked her to the PayPal deposits. Willett did not attempt to explain away these facts, other than mentioning that a search showed seven PayPal accounts in the name of Katherine Dahlberg. Dkt. No. 113 at 3. Further, Willett responded to one of Dahlberg's Interrogatories asking her to "identify your email address associated with any PayPal account you have used for any purpose since 2020" with "katiewillettdahlberg@gmail.com." Dkt. No. 139-2 at 10. In the Answer to the Counterclaim, she admitted taking money from Dahlberg's account, albeit with permission. This evidence shows that she admitted she had a PayPal account, and that the account was used to deposit funds into Dahlberg's bank account and to transfer funds to St. Croix Montessori.[2]

In *Knopf*, a third party refused to produce telephone records (bills and invoices) to the plaintiffs, citing her Fifth Amendment protections. The court ruled that "it is undisputed that there is no Fifth Amendment privilege that attaches to the records themselves," as the records "were created by a third party and do not constitute [that person's] compelled testimony." *Id.* at 190. Here, too, the records were created by PayPal and would not constitute Willett's compelled testimony. As explained in *Pallante v. Those Certain Underwriters at Lloyd's London,* No. 17-cv-1142, 2019 WL 1745664, at *2 (E.D. Pa. Apr. 18, 2019), "[t]he Fifth

---

[2] Dahlberg provides links to PayPal's website explaining how PayPal withdrawals are made from the targeted bank account, including PayPal making two small deposits into the account. Dkt. No. 122 at 13 n.1.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 24

Amendment does not protect a person from producing documents in her possession that were created by third parties. Such documents may include, for example, accountant's work papers, bank statements, and W-2 reports of income."

But even if the Court were to hold that Willett's production of the PayPal records was testimonial, the foregone conclusion exception applies because Dahlberg is not relying on Willett's "act of production to prove the existence or location of the documents." *Freedom Medical, Inc.*, 2008 WL 3791339 at *2. Under this exception, "the Fifth Amendment does not protect an act of production when any potentially testimonial component of the act of production—such as the existence, custody, and authenticity of evidence—is a foregone conclusion that adds little or nothing to the sum total of the [opposing party's] information." *Apple MacPro Computer*, 851 F.3d at 247 (citation modified); *see also In re Generic Pharms. Pricing Antitrust Litig.*, MDL No. 2724, 2019 WL 13444929, at *2 (E.D. Pa. Dec. 23, 2019). Dahlberg knows that the PayPal records exist, that PayPal has custody of the records, and that PayPal could authenticate them (in addition to the record already being admitted into evidence as Exhibit 13), and thus the foregone conclusion exception applies. *See Legend Biotech USA Inc. v. Liu*, No. 23-cv-02965, 2024 WL 919082, at *13 (D.N.J. Mar. 4, 2024); *Knopf* at 190–91 ("Even if Ringel had shown that the act of production privilege applied here, the foregone conclusion exception to that privilege would also apply. The existence, control, and authenticity of the telephone records are a foregone conclusion. The plaintiffs can confirm that the telephone records exist and can authenticate them through the telephone company that created them.").

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 25

The Court concludes that Willett must be compelled to produce all documents, in response to Request for Production 1, including but not limited to PayPal account statements for 2023 and 2024 related to the Truist account transactions on December 27, 2023 and the January 12, 2024 internet payment for $18,080.

### 2. Production of Documents Related to Communications with VIBME, Mental Health Treatment, and Treatment at Three Rivers Behavioral Health

Dahlberg seeks to compel production of documents in response to his Requests for Production 14, 15, and 16 (set out *supra*) that seek Willet's applications/correspondence with the VIBME, medical records related to treatment for any mental illness, and medical records related to treatment at Three Rivers Behavioral Health. Dkt. No. 122 at 14-15. He states that Willett's responses that she does not have the records and that she has given authorizations for Dahlberg to obtain them are insufficient, and she herself must produce all discoverable documents in response to a request if they are in her control or she has the legal right to obtain them. *Id.* Willett responds that Dahlberg has not shown that the documents are relevant. Dkt. No. 136 at 17. As to the VIBME records, the Court previously ruled that Dahlberg was entitled to her initial application to the VIBME but that the production of the remaining records that VIBME may have in its file were irrelevant, and those documents were encompassed in Dahlberg's subpoena duces tecum to the VIBME. *Id.* at 17-18, citing Dkt. No. 104. Also, since Willett indicated she did not have the VIBME documents, the court cannot compel her to produce something she does not have. *Id.* at 18.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 26

The Court agrees with Willett. The Court has already spoken on the issue of relevance in relation to Dahlberg's effort to obtain Willett's entire file with the VIBME, holding that Willett's "initial VIBME application may be relevant to issues of her credibility," and discoverable, but quashed Dahlberg's subpoena to the extent that he sought other documents in Willett's VIBME file. Dkt. No. 104 at 15-16. The relevance of the VIMBE file has already been addressed and Dahlberg makes no additional argument in support of the Motion to Compel. Dahlberg has been permitted to obtain Willett's initial VIBME application directly from the VIBME. Further, given that Willett states she does not have a copy of that application, it is unclear why Dahlberg is seeking to have Willett obtain it and then produce it to him, when he should have already obtained that document himself. The Motion to Compel documents in response to RFP 14 is denied.

As to Requests for Production 15 and 16, Dahlberg seeks documents related to mental health issues in general and also records of Willett's treatment at Three Rivers Behavioral Health. Willett has executed authorizations for Dahlberg to obtain her medical records from both her Mental Health Care Providers and Health Care Providers. In addition, she states she does not have records that would be responsive to those two requests. *See Kwanzaa v. Brown*, 05-cv-5976, 2009 WL 10873025, at *2 (D.N.J. Apr. 15, 2009) ("The Court cannot compel Defendants to produce discovery that they represent they do not have."). Dahlberg has not indicated that he has had any issues in obtaining the medical records based on these authorizations and why he would also need Willett to produce the same records. The Court will deny the Motion to Compel related to RFP 15 and 16. *In re Orthopedic Bone Screw Prods.*

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 27

*Liab. Litig.*, No. MDL 1014, 1995 WL 925666, at *1 (E.D. Pa. Sept. 15, 1995) (concluding that plaintiffs who executed authorizations for medical records need not produce their medical records in response to defendants' discovery).

**CONCLUSION**

Based on the analysis above, it is hereby **ORDERED**:

1. Dahlberg's Motion to Compel, Dkt. No. 122, is **GRANTED IN PART AND DENIED IN PART**.

2. The Motion is **GRANTED** to the extent that **Requests for Admissions 11 and 12** are **ADMITTED**.

3. The Motion is **GRANTED** to the extent that Willett is **COMPELLED** to respond to **Request for Production 1**.

4. The Motion is **DENIED** to the extent that Willett shall not be compelled to respond to Dahlberg's **Requests for Production 14, 15, and 16**.

ENTER:

Dated: March 6, 2026

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE