```
DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX
```

KATHERINE WILLETT,

    **Plaintiff/Counter-Defendant,**

    v.

CHRISTOPHER DAHLBERG,

    **Defendant/Counter-Plaintiff.**

_____

**1:24-cv-00024-MEM-EAH**

**TO:**    **Lee J. Rohn, Esq.**
        **David J. Cattie, Esq.**

## ORDER

**THIS MATTER** comes before the Court on "Defendant's Motion for Sanctions/ Disqualification against Plaintiff's Counsel Lee J. Rohn, Esq. and Rohn and Associates," ("Disqualification Motion"), filed on April 3, 2026 by David J. Cattie, Esq., attorney for Defendant/Counter-Plaintiff Christopher Dahlberg. Dkt. No. 167. In his motion, Dahlberg seeks disqualification of Attorney Rohn and her law firm pursuant to the Court's inherent authority/the ABA Model Rules of Professional Conduct ("Model Rules") based on allegedly false and unsupported factual claims made by Attorney Rohn. *Id*. at 2. Attorney Rohn filed an Opposition, Dkt. No. 169, and Attorney Cattie filed a Reply, Dkt. No. 170. For the reasons that follow, the Court will deny the Disqualification Motion.

## BACKGROUND

### I.    Procedural History

In her First Amended Complaint, Willett alleged that on numerous occasions, Dahlberg "pushed, hit, threatened and held Plaintiff down to the ground" which caused a spinal injury requiring multiple surgeries. Dkt. No. 7, ¶ 5. She incurred damages including

medical expenses, permanent injuries, post-traumatic stress disorder, chronic pain, and loss of income. *Id.* ¶ 11. She alleged claims for assault; trespass; intentional infliction of emotional distress; false imprisonment; trespass to chattels; conversion; and battery. *Id*. at 4-5. In November 2024, Dahlberg filed an Answer and Counterclaims. Dkt. No. 9. He alleged that the parties had been married from June 2009 until 2024. *Id.* ¶ 6. Willett—a licensed medical provider—experienced mental and psychological issues for years. *Id.* ¶¶ 8-21. One of the Counterclaim allegations provided that Willett stole $19,000 from his bank account in 2024, without authority to do so, and refused to return those funds. Dkt. No. 9 ¶ 40. In response to this allegation, Willett stated that, with Dahlberg's "agreement and permission," she paid the children's Montessori School tuition with that money. Dkt. No. 17 ¶ 40.

The parties litigated the terms of a protective order. In April 2025, Attorney Rohn filed an exhibit consisting of an October 2022 email from Dahlberg to his attorney in the Superior Court divorce/domestic violence proceedings that revealed attorney-client communications. Dkt. No. 37. Thereafter, Dahlberg's attorney in this Court, David J. Cattie, Esq., filed a Motion for Sanctions against Willett and Attorney Rohn, charging that Willett impermissibly accessed Dahlberg's email account and stole his privileged communications. Dkt. No. 38, 39. The Court held an evidentiary hearing on the motion on July 29, 2025. During Willett's testimony, Attorney Cattie asked questions pertaining to Dahlberg's Truist Bank statement that indicated, inter alia, that "Katie Dahlberg" had verified the bank account via PayPal on 12/27/23, and an $18,080 withdrawal for "St. Croix Montess" was made on 1/12/24. In response to all of the questions concerning this exhibit and withdrawal of funds,

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 3

Willett stated that, upon the advice of her attorney, she was "pleading the Fifth [Amendment]." Dkt. No. 137 at 11. Exhibit 13, Dahlberg's Truist Bank account statement showing "Katie Dahlberg's" PayPal micro-deposit account verifications in December 2023 and the January 2024 $18,080 withdrawal, was admitted into evidence. That bank statement is one of the exhibits accompanying Dahlberg's Disqualification Motion. Dkt. No. 167-1.

The Court issued a Report & Recommendation ("R&R") on January 9, 2026 that recommended granting in part Dahlberg's Motion for Sanctions in the form of attorney's fees and costs and denying the motion to the extent that Dahlberg had asked that the case be dismissed. Dkt. No. 137. The R&R contained a warning to both Willett and Attorney Rohn that if Dahlberg could prove that Willett used information in subsequent filings that came from other improperly accessed emails, the Court would accept a renewed motion for sanctions seeking dismissal and might consider assessing sanctions against Attorney Rohn. *Id.* at 40. The District Judge overruled Dahlberg's Objection to the R&R that dismissal be denied, adopted the R&R in its entirety, and directed the Court to assess the reasonableness of the attorney's fees and expenses submitted by Dahlberg. Dkt. No. 163. In an April 16, 2026 Order, the Court ordered Willett to pay the attorney's fees as a sanction. Dkt. No. 168.

In the meantime, in November 2025, Dahlberg filed a Motion to Compel, Dkt. No. 122, in which he, inter alia, challenged two of Willett's responses to his requests for admission ("RFA") and one response to his requests for production ("RFP") where Willett had invoked her Fifth Amendment privilege to his questions asking about the withdrawal of the funds

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 4

from Dahlberg's Truist account, including any PayPal account statements. Dkt. No. 122. In

her opposition to the Motion to Compel, filed on January 8, 2026, Willett asserted:

> At this juncture, Dahlberg speculates that Willett utilized a PayPal account to transfer money from his bank account to St. Croix Montessori. However, there is *no evidence* that Willett has a PayPal Account. There is *no evidence* linking Willett to the PayPal deposits. Indeed, a search of PayPal demonstrates that there are *at least seven accounts for people on PayPal with the name 'Katherine Dahlberg.' There is no evidence tying the PayPal Account and the PayPal deposits to the transfer to St. Croix Montessori.*

Dkt. No. 136 at 15. In his Disqualification Motion, Dahlberg challenges, in particular, the

emphasized statements (the "challenged statements"). Dkt. No. 167 at 4.

In a March 6, 2026 Order, the Court granted in part and denied in part Dahlberg's

Motion to Compel. Dkt. No. 152. It concluded, inter alia, that Willett had waived her Fifth

Amendment privilege by not timely invoking it. *Id.* at 20-21. It also rejected her arguments

that producing documents (including PayPal account statements) related to the withdrawal

from the Truist account would "implicitly communicate inculpatory statements of fact that

the Fifth Amendment protects," thereby causing her to potentially admit that she had a

PayPal account that was used to transfer those funds. *Id*. at 22-25. The Court cited Willett's

December 2025 response to a Dahlberg interrogatory in which she identified her email

address associated with her PayPal account, and Exhibit 13, showing that she had a PayPal

account that linked her to the Truist Bank PayPal deposits—a fact she did not try to explain

other than by mentioning that a search showed seven PayPal accounts in the name of

Katherine Dahlberg. Dkt. No. 152 at 23. The Court concluded that production of PayPal

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 5

records was not testimonial; even if it was, an exception applied because Dahlberg was not relying on Willett's act of production to prove the existence of the documents. *Id.* at 22-25.

## II. The Instant Motion

Dahlberg's Disqualification Motion centers upon the alleged falsity of the challenged statements Willett, through Attorney Rohn, made in her Opposition to the Motion to Compel. Dkt. No. 167. He cites evidence already in the record at the point Willett responded to the Motion to Compel, including: (1) Willett's answer to Counterclaim ¶ 40 in which she admitted taking funds from Dahlberg's Truist Bank account (with permission) to pay tuition at St. Croix Montessori school; (2) Exhibit 13, where the entries reflected "the standard PayPal micro-deposit account verification process, by which PayPal verifies a linked external bank account by sending two small deposits and confirming receipt," that PayPal account was "identified in the bank records as belonging to 'KATIE DAHLBERG'—i.e., Katherine Willett (formerly Katherine Dahlberg), the Plaintiff in this action." Dkt. No. 167 at 4-5, citing Dkt. No. 167-1; and (3) the December 2025 interrogatory response showing Willett's email tied to a PayPal account, *id.* at 5-6 (citing Dkt. No. 152 at 23). Relying on this record evidence, Dahlberg argues that Attorney Rohn's statements that her client did not have a PayPal account and there was no evidence that Willett used that account to make the small deposits in the Truist account were false. Dkt. No. 167 at 6. Exhibit 13 showed Willett's name linked to PayPal verification entries; she identified a PayPal email address in response to an interrogatory; and her answer to the Counterclaim admitted she made the transfer, all undermining that an unidentified Katie Dahlberg from among "at least seven" PayPal

accounts was responsible for the $18,080 transfer. This was not advocacy on a contested issue of fact, but knowingly false assertions of fact made in a filing to the Court. *Id.* at 8-10.

According to Dahlberg, this conduct violated multiple Model Rules of Professional Conduct: (1) Model Rule 3.3(a)(1) regarding candor toward the tribunal, which provides that a lawyer should not knowingly make a false statement of fact or law to a tribunal, *id.* at 10; (2) Model Rule 3.1, providing that a lawyer shall not assert positions in litigation that are frivolous or lacking in good faith, *id.* at 11-12; (3) Model Rule 8.4(c), providing that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and (4) Model Rule 8.4(d) prohibiting conduct that is prejudicial to the administration of justice, *id.* at 12-13.

Dahlberg concludes that only disqualification will restore any semblance of fairness in this case: he has expended an inordinate amount of time and money because Willett hacked his privileged emails and now Attorney Rohn has made repeated false statements to the Court. *Id.* at 14. Although the Court has warned Willett and Attorney Rohn about their conduct in this case, nothing short of dismissal or disqualification will restore integrity to the proceedings. Further, Attorney Rohn's misconduct cannot be viewed in a vacuum, given other cases in which she has been reprimanded for misleading the court. *Id.* at 14-15 (citing Virgin Islands cases from 2020 and 2003). Dahlberg requests that the Court: (1) disqualify Attorney Rohn from further representation of Willett; and (2) award reasonable attorney's fees and costs in connection with the instant motion. *Id.* at 15.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 7

In her Opposition filed on April 17, 2026, Willett, through Attorney Rohn, argues that the statements Dahlberg characterizes as knowing lies were components of a constitutional argument that required her to challenge whether Dahlberg had established the evidentiary predicates necessary to overcome her Fifth Amendment privilege. Dkt. No. 169. The "no evidence that Willett had a PayPal Account" statement was directed at whether Dahlberg had independently established her PayPal account ownership sufficient to establish that the Fifth Amendment privilege did not apply; the statement that there was "no evidence linking Willett to the PayPal deposits" was directed to whether Dahlberg had independently established a connection between the account and the specific transactions; and the reference to multiple PayPal accounts in the name of Katherine Dahlberg was directed to whether Dahlberg could independently establish identity and attribution without relying on Willett's production of the documents: producing PayPal records would link her to the transactions at issue, supplying the links Dahlberg's proof lacked. *Id.* at 8-9.

Attorney Rohn contends that arguing that an opponent has not met his burden under a constitutional doctrine is not misconduct, and the court's rejection of a legal argument is not a basis for disqualifying the lawyer who made it. *Id*. at 2, 7-12. Willett disclosing an email address associated with a PayPal account three weeks before the Opposition to the Motion to Compel was filed and Dahlberg's asserting that Attorney Rohn knew her client had a PayPal account when she wrote there was no evidence of one, conflates the question of whether she knew her client had a PayPal account with whether Dahlberg had independently established the evidentiary predicates that the Fifth Amendment privilege did not apply.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 8

Rule 3.3(a)(1) requires actual knowledge of falsity; counsel's knowledge of the underlying facts did not relieve Dahlberg of his evidentiary burden, regardless of what counsel knew about the PayPal account. *Id.* at 10.

Willett also asserts that Dahlberg's own conduct foreclosed a finding of bad faith. Four days after receiving her Opposition, he filed a Reply, Dkt. No. 139, in which he argued the merits and raised no concerns about misconduct. He filed the instant motion weeks after the Court granted in part and denied in part his Motion to Compel. That sequence was not consistent with a genuine belief that opposing counsel committed fraud on the tribunal. *Id*. at 2-3. In addition, Dahlberg bypassed Fed. R. Civ. P. 11(c)(2), which required him to identify the allegedly false statements and allow opposing counsel twenty-one days to correct them before filing a sanctions motion in which he sought disqualification—a remedy far more severe than anything Rule 11 authorizes. *Id*. at 3. Failure to file a Rule 11 motion is independently dispositive of the Disqualification Motion. *Id*. at 5-7.

Finally, disqualification is an extraordinary remedy, justified when conduct threatens to taint the fairness of the proceedings; a court's rejection of legal arguments does not meet that standard. *Id*. at 3-5, 12-14. Reliance on factually different conduct in different contexts in other cases involving Attorney Rohn cannot substitute for proof that the conduct at issue here warrants any sanction at all*. Id*. at 12. Disqualification is grossly disproportionate to the conduct at issue. *Id.* at 12-14. The balancing test in *McKenzie Construction v. St. Croix Storage Corp.* 961 F. Supp. 857, 859 (D.V.I. 1997), requires the Court to weigh a client's right to retain counsel of her choice against the public trust in the judicial system and to find that counsel's

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 9

continued participation would actually threaten the fairness of the proceedings before imposing so drastic a remedy. *Id*. at 12. No evidence has been compromised, no witness has been affected, no conflict of interest exists, the discovery dispute giving rise to the motion has been fully resolved, and the proceedings are not tainted. Where those conditions are absent, disqualification is not appropriate. Dahlberg offers no explanation for why removing opposing counsel is necessary here, nor could he. *Id*. at 13-14.

In his Reply, Dahlberg asserts that consideration of Attorney Rohn's past conduct in this and other cases is "essential" to the Court's determination of whether disqualification is the proper remedy, given that Attorney Rohn "does not care" if she is scolded or warned by the Court about her actions; lesser sanctions will reinforce her belief that she can get away with misconduct in the long run. Dkt. No. 170 at 2-3. The Court has warned Attorney Rohn in this case about her actions, and her history in other cases is replate with instances of misconduct. *Id*. at 3-4. Moreover, motions to disqualify for violations of the Model Rules are made under the Court's inherent authority, not Rule 11. *Id*. at 4-6 (citing cases). Attorney Rohn cites no authority for her point that she could not have acted in bad faith because Dahlberg did not file his Disqualification Motion until after the Motion to Compel was resolved. *Id*. at 6.

Lastly, dishonesty is not legitimate advocacy, as there is no "contextual dishonesty" exemption to one's duty of candor to the Court. Attorney Rohn was not free to make false statements because she was challenging whether Dahlberg submitted sufficient evidence to overcome the Fifth Amendment privilege. *Id*. at 6-7. She was not simply arguing that

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 10

Dahlberg had not established that Willett had a PayPal account. Rather, she made direct assertions of fact that were false—that there was "no evidence" to support the existence of such an account, and even included the account statement (part of Exhibit 13) in her Opposition to the Motion to Compel (Dkt. No. 135 at 4). But Willett had a PayPal account as admitted in response to an interrogatory, Willett had admitted to taking the money, and Attorney Rohn knew of that admission. *Id.*

## DISCUSSION

### I.    Legal Standards

A district court's "power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980). In the District Court of the Virgin Islands, the ABA Model Rules govern the professional responsibilities of practicing attorneys. *See* LRCi 83.2(a)(1); *VECC, Inc. v. Bank of Nova Scotia*, 222 F. Supp. 2d 717, 719 (D.V.I. 2002).

At issue in this motion are three Model Rules: 3.3, 3.1, and 8.4. Model Rule 3.3, entitled "Candor toward the Tribunal," provides, in relevant part, that "a lawyer shall not knowingly: make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." ABA Model Rule 3.3(a)(1). "Knowingly" "denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances." ABA Model Rule 1.0(f). Further, "the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false." ABA Model Rule 3.3, cmt 2.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 11

ABA Model Rule 3.1, entitled "Meritorious Claims and Contentions," provides, in pertinent part, that a lawyer "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . ." ABA Model Rule 3.1. Comment 2 of the Rule explains that "[w]hat is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." Model Rule 3.1 cmt. 2. The U.S. Supreme Court has defined "frivolous" as a case or position that "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Model Rule 8.4, entitled "Misconduct," provides, in relevant part, that it is "professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice." ABA Model Rule 8.4(c), (d).

Motions to disqualify "are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary. Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a heavy burden and must meet a high standard of proof before a lawyer is disqualified." *Casa Bella Luna, LLC v. Gov't of U.S. V.I.*, No. 22-cv-15, 2023 WL 6621148, at *3 (D.V.I. Oct. 11, 2023); *see also Blueprint Capital Advisors, LLC v. New Jersey*, No. 20-cv-7663, 2025 WL 1040380, at *4 (D.N.J. Apr. 8, 2025) (the disfavored view of such

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 12

motions "derives from the reality that motions to disqualify are sometimes made solely for

tactical reasons."). Even if a court finds that an attorney has violated the Model Rules,

> "disqualification is never automatic." *Brice v. Hess Oil Virgin Islands Corp.*, 769 F.
> Supp. 193, 195 (D.V.I. 1990) (quoting *Miller*, 624 F.2d at 1201). Rather, a "court
> should disqualify an attorney only when it determines, on the facts of the
> particular case, that disqualification is an appropriate means of enforcing the
> applicable disciplinary rule." *Id.* (quoting *Miller*, 624 F.2d at 1201); *see also
> Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994)
> ("a district court must ensure that there is an adequate factual predicate for
> flexing its substantial muscle under its inherent powers").

*Casa Bella Luna*, 2023 WL 6621148, at *2.[1]

There is little guidance on the standard a court should apply when considering

disqualification in the context presented here. The Third Circuit, in *Richardson v. Hamilton*

*Int'l Corp.*, 469 F.2d 1382 (3d Cir. 1972), observed that courts "have a responsibility to

maintain public confidence in the legal profession. This means that a court may disqualify an

attorney for not only acting improperly but also for failing to avoid the appearance of

---

[1] The *Casa Bella Luna* Court then set forth a four-factor test for disqualification:

> In making this determination, a court should balance the following factors: (1)
> "[t]he interest of a client in the continued loyalty of his attorney"; (2) "the
> opposing litigant's interest in retaining his chosen counsel"; (3) prejudice to the
> opposing litigant in terms of "time and expense required to familiarize a new
> attorney with the matter"; and (4) "the policy that attorneys be free to practice
> without excessive restrictions." *Brice*, 769 F. Supp. at 195; *see also Pepper v. Little
> Switz. Holdings, Inc.*, 2005 U.S. Dist. LEXIS 14453, *5–6, 2005 WL 1668916 (D.V.I.
> July 6, 2005).

*Casa Bella Luna*, 2023 WL 6621148, at *2. This test appears to be geared to disqualification
motions based on an attorney conflict of interest matter at issue in *Casa Bella Luna*, 2023 WL
6621148, at *6 (Model Rule 1.7) and also in *Brice*, 769 F. Supp. at 195 (Model Rule 1.9). The
test's factors in the context presented here are minimally relevant.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 13

impropriety." *Id.* at 1385-86. In *Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.,* 190 F.

Supp. 3d 419, 432 (M.D. Pa. 2016), the court analyzed how to remedy an attorney's ethical

violation occurring in litigation, including a violation of Rule 8.4(c) of the Pennsylvania Rules

of Professional Conduct (substantially similar to Model Rule 8.4(c)). The court noted that, "in

remedying an ethical violation, it is appropriate to consider the seriousness of the violations

and whether the violations were intentional, as well as the nature and extent of prejudice

suffered or likely to be suffered by the parties in the future as a result of the violation." *Id.* at

433 (citation modified). It quoted *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d

65, 74 (3d Cir.1994), that provided a two-step process when imposing sanctions:

> First, the court must consider the conduct at issue and explain why the conduct warrants sanctions. If an attorney, rather than a client, is at fault, the sanction should ordinarily target the culpable attorney. Obviously, a pattern of wrongdoing may require a stiffer sanction than an isolated incident; a grave wrongdoing may compel a more severe sanction than might a minor infraction; and wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand a stronger response than wrongful conduct that, through good fortune or diligence of court or counsel, fails to achieve its untoward object. Furthermore, there may be mitigating factors that must be accounted for in shaping the court's response.
>
> Second, having evaluated the conduct at issue, the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate.

*Scranton Prods.*, 190 F. Supp. 3d at 433.

"Matters concerning the disqualification of counsel are invariably treated as non-

dispositive pretrial motions by courts in this jurisdiction and elsewhere." *Andrews v.*

*Goodyear Tire & Rubber Co.*, 191 F.R.D. 59, 68 (D.N.J. 2000) (citing cases); *see also VECC, Inc.*

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 14

222 F. Supp. 2d at 719 (opining that "[a] motion to disqualify counsel is a non-dispositive matter[.]"). Accordingly, Magistrate Judges may adjudicate motions for disqualification.

## II.      Application

The Court is called upon to address two questions: (1) did the challenged statements violate the enumerated Model Rules, given the evidence in the record at that time, or were they advanced to support Willett's assertion of her Fifth Amendment privilege (and were therefore justified), and (2) if they violated the Model Rules, should the Court disqualify Attorney Rohn from representing Willett as a remedy?

### A.      Preliminary Matters

The Court quickly dispenses with Attorney Rohn's argument that Dahlberg's failure to comply with the safe harbor provision of Fed. R. Civ. P. 11 is independently dispositive of the Disqualification Motion. Dkt. No. 169 at 5-7. The only case she cites in support of this proposition is *ED Capital LLC v. Bloomfield Investment Resources Corp.*, 316 F.R.D. 77 (S.D.N.Y. 2016). *Id.* at 5. However, in *ED Capital*, the defendant filed a motion under Rule 11 for sanctions against the plaintiff, arguing that the complaint and a subsequent motion asserted frivolous arguments in an improper forum. *Id.* at 79. That case is completely inapposite to the issues presented here, as it did not address disqualification at all and did not stand for the proposition that a disqualification motion was required to be brought under Rule 11. Dahlberg did not seek to disqualify counsel under Rule 11 but under the Model Rules of Professional Conduct, which this Court has found sufficient, by itself, to raise the issue of

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 15

attorney disqualification.[2] *See, e.g., Denero v. J-Macks Props., LLC*, No. 13-cv-0073, 2021 WL 10343494, at *3 (D.V.I. June 30, 2021); *Rodriguez v. Spartan Concrete Prods. LLC*, No. 12-cv-0029, 2017 WL 1508179 (D.V.I. , Apr. 25, 2017); *Mathurin v. Sun Constructors, Inc.*, No. 05-cv-0183, 2012 WL 3646734, at *2 (D.V.I. Aug. 27, 2012); *Nunez v. Lovell*, No. 05-cv-0007, 2008 WL 4525835 (D.V.I. Oct. 3, 2008); *McKenzie Const.* 961 F. Supp. 857.

In the context of her Rule 11 argument, Attorney Rohn critiques Dahlberg for not raising the issue of alleged misconduct in his Reply to her Opposition to the Motion to Compel, since at that time he possessed all the relevant information he included in his Disqualification Motion. Dkt. No. 169 at 6-7. She cites no case law in support of her contention that the Disqualification Motion was somehow precluded on the basis of this timing or because his Reply focused on the merits. *Id*. at 2-3. The Court also rejects Attorney Rohn's argument that the Disqualification Motion suffered from a fatal flaw because it rested on her pasting bank records (part of Exhibit 13) into her Opposition Brief to show that she was aware of those records, when she did so only to frame her Opposition arguments. *Id*. at 1. The Court concludes below that Attorney Rohn had knowledge of that Exhibit as early as the July 2025 Sanctions Hearing; whether she embedded part of it in her Opposition to the Motion to Compel is not dispositive of her knowledge of the challenged statements.

---

[2] Case law distinguishes sanctions under Rule 11 from sanctions imposed under the court's inherent power—the basis for imposing sanctions for violating the Model Rules. *See, e.g., Wronko v. Martin*, No. 16-cv-2488, 2018 WL 4562462, at * 2 (D.N.J. Sept. 24, 2018) ("A district court also has the inherent power to sanction, separate from its authority under Rule 11 or any other rule or statute.").

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 16

Further, while Dahlberg has based his disqualification arguments on Attorney Rohn's

"false and unsupported factual claims," Dkt. No. 167 at 2, the basis for Attorney Rohn's

Opposition is not crystal clear. On the one hand, she describes the challenged statements as

"factual assertions." Dkt. No. 169 at 2, 8. On the other hand, she contends that the statements

"were not freestanding factual assertions" but were "components of a specific and legitimate

constitutional argument . . . that specifically required counsel to challenge whether

Defendant had independently established the evidentiary predicates necessary to overcome

Plaintiff's Fifth Amendment privilege." *Id*. at 8. Whether the Court views the challenged

statements as factual assertions or the basis for a legal argument, the result is the same: they

violated the Model Rules.

## B.    Analysis

On January 8, 2026, when Attorney Rohn included the challenged statements in

Willett's Opposition to the Motion to Compel, the record contained the following evidence:

1. In her Answer to Counterclaim ¶ 40 (alleging that in 2024, Willett stole $19,000 from Dahlberg's bank account, without authority to do so, Dkt. No. 9 ¶ 40), Willett admitted that she paid the children's Montessori tuition out of Dahlberg's account, with his permission. Dkt. No. 17 ¶ 40. While the means of payment and the "bank account" were not specified, Willett admitted taking $19,000 from Dahlberg's bank account in 2024. *Id*. Attorney Rohn signed the Answer. *Id*. at 7.

2. The admission of Exhibit 13 at the July 2025 Sanctions Hearing—Dahlberg's December 2023-January 2024 Truist Bank Account Statement—showing December 2023 micro-deposit account verifications from two PayPal accounts in the name of Katie Dahlberg, and a January 12, 2024 internet payment of $18,080 to "St. Croix Montes." Dkt. No. 167-1. The $18,080 figure approximates the $19,000 Dahlberg alleged was stolen in Counterclaim ¶ 40, and "St. Croix Montes" appears to be St. Croix Montessori, which Willett admitted the $18,080 payment was sent to in her answer to Counterclaim ¶ 40. The Exhibit showed that the means of transfer was Katie Dahlberg's PayPal account. *See* Dkt. No. 167-2.

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 17

3.  Willett's December 2025 response to an interrogatory in which she identified an email address associated with "any PayPal account" she had used since 2020. Dkt. No. 139-2 at 10. The interrogatory was signed by Attorney Rohn. *Id.* at 14.

Attorney Rohn nevertheless asserted in Willett's Opposition to the Motion to Compel that (1) there was no evidence Willett had a PayPal account; (2) there was no evidence linking Willett to the PayPal deposits, particularly since there were seven Katie Dahlbergs on PayPal; and (3) there was no evidence tying the PayPal account and the PayPal deposits to the transfer to St. Croix Montessori. *Id.* at 14-15. However, the simple timeline above, showing what evidence was in the record and when, leads to only one conclusion: the three statements that "no evidence" linked Willett to the PayPal account, the deposits in Dahlberg's Truist account, and the $18,080 withdrawal from the Truist account, were false and misrepresented the record. Willett admitted she took the $18,080, allegedly with permission, to pay St. Croix Montessori school; she had an email that linked her to a PayPal account; and Exhibit 13 showed Katie Dahlberg used two PayPal accounts to verify Dahlberg's Truist account and withdrew $18,080 to pay St. Croix Montes. While numerous Katie Dahlbergs might exist, only one withdrew $18,080 to pay "St. Croix Montes" during the timeline at issue. Dkt. No. 17 ¶ 40. Attorney Rohn, having signed the Counterclaim Answer and the December 2025 response to the interrogatory, and having examined Exhibit 13 during the July 2025 hearing, (even interposing an objection, Dkt. No. 113 at 180) knew what these documents contained. The challenged statements, as statements of fact, were false.

Even if the Court were to consider the statements as part of a legal argument challenging whether Dahlberg had "independently established the evidentiary predicates"

to overcome Willett's Fifth Amendment privilege, Dkt. No. 169 at 8, they would also run afoul of the Model Rules. A challenge to the "evidentiary predicates" of Dahlberg's argument would have involved a challenge to the record evidence to show how and why that evidence fell short of overcoming Willett's Fifth Amendment privilege. Attorney Rohn did not make such an argument. Instead, she categorically stated that no such evidence existed to link Willett to the PayPal deposits and transfer when there was. Attorney Rohn's contention that the challenged statements were legal arguments and therefore constituted permissible advocacy to protect Willett's Fifth Amendment privilege, is merely a fig leaf meant to cover and justify false statements. As Dahlberg observes in his Reply Brief, there is no "contextual dishonesty exemption" to an attorney's duty of candor to the Court. Dkt. No. 170 at 6-7. Model Rule 3.3(a)(1) prohibits both false statements of fact and law and would encompass factual statements upon which a legal argument is based.

Model Rule 3.3(a)(1) is violated, however, when a lawyer "knowingly" makes false statements of fact or law; "knowingly" denotes "actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances." ABA Model Rule 1.0(f). At the very least, Attorney Rohn's knowledge of the falsity of the challenged statements may be easily inferred, given her role in drafting Willett's answer to Counterclaim ¶ 40, her knowledge of Willett's December 2025 response to the interrogatory, and her knowledge of the contents of Exhibit 13. Attorney Rohn appears to concede this knowledge by stating "[c]ounsel's knowledge of the underlying facts did not relieve Defendant of his independent evidentiary burden, and challenging whether he had met it was entirely proper regardless of what

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 19

counsel knew about Willett's PayPal account." Dkt. No. 169 at 10. As the Court concluded above, while Dahlberg shouldered the burden to show Willett's Fifth Amendment privilege did not apply, that did not excuse Attorney Rohn basing her opposition on false statements. Moreover, the fact that Attorney Rohn's Fifth Amendment arguments did not prevail is a different matter from advancing her foundational argument that no evidence supported it. Leaving Dahlberg to his proof is quite different from affirmatively stating that *no evidence* supported his position. ABA Model Rule 3.3, cmt 2. The Court therefore concludes that Attorney Rohn violated Model Rule 3.3(a)(1) in knowingly making false statements of fact and/or law to the tribunal.

Dahlberg's arguments that Attorney Rohn violated additional Model Rules (Rule 3.1, Rule 8.4(c) and Rule 8.4(d)) rely on the same evidence that underlies the violation of Rule 3.3(a)(1), and lead to the conclusion that those Rules were violated as well. Rule 3.1 prohibits a lawyer from asserting or controverting an issue "unless there is a basis in law and fact for doing so that is not frivolous[.]" Model Rule 3.1. A legal argument that "lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325, is a frivolous argument. Because the challenged statements had no basis in fact or law, the facts and the legal argument based on those facts were frivolous and violated Rule 3.1. *See Best v. C.I.R.* 2016 WL 799010, at *4-*5 (U.S.T.C. Feb. 29, 2016) (frivolous arguments violated Model Rule 3.1). Under Rule 8.4(c) and 8.4(d), it is "professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;" and "(d) engage in conduct that is prejudicial to the administration of justice."

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 20

> Many courts ruling on ethics rules similar or identical to ABA Model Rule 8.4(c) have explained that a culpable mental state greater than negligence is necessary to establish a prima facie violation of Rule 8.4(c). This requirement is met where the misrepresentation is made knowingly, or where it is made with reckless ignorance of the truth or falsity thereof. Neither actual knowledge nor intent to deceive on the part of the attorney is necessary to establish a prima facie misrepresentation violation.

*In re Husain,* 533 B.R. 658, 696–97 (Bankr. N.D. Ill. 2015), *aff'd sub nom. Matter of Husain*, 866 F.3d 832 (7th Cir. 2017) (citation modified). As to Rule 8.4(d), "[t]he court system depends on the ethical and professional conduct of attorneys. . . . Ethical, dependable performance by lawyers remains indispensable." *Id*. at 697. Here, the Court's conclusion that Attorney Rohn knowingly made false statements (misrepresentations) that supported a violation of Rule 3.3(a)(1) suffices for a violation of Rule 8.4(c). Similarly, if an attorney's conduct is not ethical (and professional), that is prejudicial to the administration of justice. *Id*.; *see also In re Irion*, No. 24-cv-7, 2025 WL 2319537, at *23 (E.D. Tenn. Aug. 4, 2025) (violation of Tennessee Rule of Professional Conduct 3.3, based on Model Rule 3.3 "would inherently violate both TRPC 8.4(c) and 8.4(d)," also based on Model Rules 8.4(c) and (d)).

Thus, whether considered factual statements or legal arguments, the Court concludes that the challenged statements violate Model Rules 3.1, 3.3(a)(1), 8.4(c). and 8.4(d).

### C.    An Appropriate Remedy

Having found that Attorney Rohn violated the aforementioned Model Rules, the next question is whether disqualification is the proper remedy. As the case law points out, disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Casa Bella Luna*, 2023 WL 6621148, at *3. A court must consider if

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 21

disqualification is an appropriate means to enforce the particular disciplinary rule. *Id*. The disqualification of counsel is an "intensely fact-specific" question and must be "approached with a keen sense of practicality as well as a precise picture of the underlying facts." *Irene Schneider Family Tr. v. PNC Bank, N.A.*, No. 23-3146, 2024 WL 712562, at *2 (D.N.J. Feb. 20, 2024) (citation modified).

Dahlberg seeks only disqualification, as opposed to a more calibrated sanction directed to the specific challenged statements. His disqualification request is based on the Court's prior warning to Willett and Attorney Rohn in the R&R recommending sanctions, and on Attorney Rohn's improper conduct in other cases. Dkt. No.167 at 1, 2, 14, 15. He asserts that, following the warning, instead of acting cautiously, Attorney Rohn "immediately filed pleadings in this case replete with intentional and knowing falsehoods," which was in line with her "history of making false statements and misrepresentations across a slew of cases for decades." Dkt. No. 170 at 9. Therefore, warning her not to repeat that behavior only ensures that such misbehavior will be repeated; her continued presence threatens to taint the fairness of the proceedings and prejudices Dahlberg, *id*. at 4.

While Dahlberg is, of course, correct that in its January 9, 2026 R&R on his Motion for Sanctions, the Court primarily warned Willett, and also warned Attorney Rohn, that if Dahlberg could prove that Willett used other improperly accessed emails between Dahlberg and his state court counsel, the Court would accept a renewed motion for dismissal and might consider assessing sanctions against Attorney Rohn. Dkt. No. 137 at 40. Dahlberg's argument above implies that, despite that warning, Attorney Rohn filed the Opposition to the

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 22

Motion to Compel containing the challenged statements anyway, ignoring that warning. However, Dahlberg's timing is off. Attorney Rohn filed her Opposition on January 8, 2026, a day *prior* to the issuance of that R&R. She obviously could not have ignored a warning that had not yet been issued when she filed the Opposition. Thus, the only warning the Court has given to Attorney Rohn in *this* case was contained in the January 9, 2026 R&R, which was primarily directed to Willett—although the Court made clear that it viewed Attorney Rohn as having a role in the sanctionable conduct. The fact that Attorney Rohn may have been sanctioned, disqualified, or otherwise chastised for her behavior or filings in other cases does push her behavior currently at issue across the disqualification finish line based only on the prior warning in the R&R.

While the Court does not countenance Attorney Rohn's lack of candor and violation of the Model Rules as described above, disqualification based on that lack of candor is a sanction substantially out of proportion in response to her inclusion of the challenged statements in Opposition to the Motion to Compel. When courts have disqualified counsel based on unethical behavior, the behavior has been "truly egregious." *US Dominion, Inc. v. Byrne*, No. 21-cv-2131, 2024 WL 3792654, at *26 (D.D.C. Aug. 13, 2024) (counsel's intentional breach of a protective order that had significant consequences and was without justification, subsequent repeated violation of court orders and misrepresentations to the court, despite a prior admonishment, and a finding that the attorney "has already severely tainted this proceeding" warranted disqualification).

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 23

This conclusion is underscored by considering the *Scranton Products* factors. While it is an ethical violation to misrepresent facts or law, or make frivolous arguments to the Court, the violations here—untrue statements made in an Opposition brief where the Court rejected those statements in assessing the Motion to Compel—were not, in the grand scheme of things, so serious that they impacted the proceedings. The prejudice suffered by Dahlberg appears to be minimal, as the discovery issue tied to the challenged statements has already been dealt with and the parties have moved on. Consequently, the Court does not agree with Dahlberg's essentially conclusory statement that only disqualification will restore any semblance of fairness and integrity to these proceedings.

The Court emphasizes that, by declining to disqualify Attorney Rohn, it is merely concluding that disqualification is a disproportionate penalty for the violations at issue . And because Dahlberg only sought the nuclear option of disqualification, rather than a more narrowly tailored remedy, the Court will deny the motion and will not impose any sanction that Dahlberg has not sought. *See Scranton Prods.*, 190 F. Supp. 3d at 434 (quoting *Bartos v. Pennsylvania*, Civil No. 1:08–cv–0366, 2010 WL 1816674, at *6 (M.D.Pa. May 5, 2010) for the "basic tenet" that "sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court."); *see also Marquis v. Sadeghian*, No. 4:19-cv-626, 2021 WL 4148754, at *5 (E.D. Tex. Sept. 13, 2021) (concluding that although a motion to dismiss was frivolously filed, it did not warrant "the severe sanction of disqualification. In a disqualification inquiry, there must not only be attorney misconduct, but also a finding that

*Willett v. Dahlberg*
1:24-cv-00024-MEM-EAH
Order
Page 24

society's interests will not be served if the lawyer continues to participate in the case—*i.e.*, the public's confidence in the legal system would be jeopardized. Here, the Court quickly disposed of the Motion to Dismiss, and the Court is well-equipped to address any future misconduct. The Court finds, at this time, [the offending attorney's] continued participation will not compromise the public's confidence in the legal system. Therefore, the severe sanction of disqualification is not warranted notwithstanding [the attorney's] misconduct.").

If, however, Attorney Rohn makes additional factual statements in future filings that Dahlberg can show knowingly misrepresent the record, that may well serve as a basis for disqualification or other sanction. This Order shall therefore serve as a warning to Attorney Rohn not to engage in such litigation tactics because, if it repeats, that will raise the stakes of the misconduct and may require a more compelling remedy.

## CONCLUSION

Accordingly, for the reasons set forth above, it is hereby **ORDERED** that "Defendant's Motion for Sanctions/Disqualification against Plaintiff's Counsel Lee J. Rohn, Esq. and Rohn and Associates," Dkt. No. 167, is **DENIED.**

ENTER:

Dated: June 23, 2026

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE